IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| SHANTER NORMAN, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 1:24-cv-00007-MJT |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | |
| DISTRICT, *et al.* | § | |
| *Defendants*. | § | |

---

**DEFENDANTS BEAUMONT INDEPENDENT SCHOOL DISTRICT,
DR. SHANNON ALLEN, AND CHIEF JOSEPH MALBROUGH'S
MOTION FOR FINAL SUMMARY JUDGMENT**

---

**THOMPSON & HORTON LLP**

Stephanie A. Hamm, Attorney in Charge
shamm@thompsonhorton.com
Alexa Gould
agould@thompsonhorton.com
Morgan Beam
mbeam@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-9611

**ATTORNEYS FOR DEFENDANTS**

## <u>TABLE OF CONTENTS</u>

I. NATURE AND STAGE OF PROCEEDING ...................................................................................1

II. ISSUES PRESENTED .................................................................................................................2

III. SUMMARY JUDGMENT STANDARD ....................................................................................2

IV. FACTUAL BACKGROUND .......................................................................................................3

V. ARGUMENTS AND AUTHORITY ..........................................................................................10

    A.   Norman cannot create a genuine issue of material fact that Beaumont ISD treated him less favorably than similarly situated employees because of his religious beliefs. ...........................10

       1.   Norman's repeated misconduct rendered him unqualified for his position. ......................10

       2.   Norman has no evidence that he was treated less favorably than similarly situated employees outside his protected class. ..............................................................................................11

    B.   Norman cannot create a genuine issue of material fact that Beaumont ISD retaliated against him for engaging in protected activity.........................................................................................11

    C.   Beaumont ISD had a legitimate, nondiscriminatory, and nonretaliatory reason for terminating Norman's employment, and Norman cannot create a genuine issue of material fact as to pretext. ...............................................................................................................................13

    D.   Norman cannot create a genuine issue of material fact that Beaumont ISD subjected him to a hostile work environment based on his religion.............................................................................14

    E.   Norman's religious discrimination and retaliation claims against the Individual Defendants fail as a matter of law because the Texas Labor Code does not allow for individual liability. ......16

    F.   Norman cannot create a genuine issue of material fact that Beaumont ISD violated his First Amendment rights because Norman did not engage in protected speech, and because Norman cannot establish that the Board ratified, or was otherwise involved in, any illegal conduct. ...16

       1.   Norman did not engage in protected speech. .....................................................................17

       2.   Norman's alleged constitutional injury was not is not traceable to Beaumont ISD's Board of Trustees...........................................................................................................................21

    G.   Norman cannot raise a genuine issue of material fact that Beaumont ISD denied him due process under the Fourteenth Amendment. ...................................................................................24

    H.   The Individual Defendants are immune from Norman's constitutional claims. ......................26

       1.   Norman has no evidence that Dr. Allen or Chief Malbrough violated his constitutional rights.................................................................................................................................28

       2.   Norman has not alleged an actionable deprivation of his constitutional rights. .................28

    I.   Norman cannot recover punitive damages against Beaumont ISD...........................................29

VI. CONCLUSION........................................................................................................................29

## **TABLE OF AUTHORITIES**

### **Federal Cases**

*Alamo Heights Indep. Sch. Dist. v. Clark*
    544 S.W.3d 755 (Tex. 2018) ...................................................................................12

*Alexander v. Eeds*
    392 F.3d 138 (5th Cir. 2004) ..................................................................................27

*Anderson v. Creighton*
    483 U.S. 635 (1987) ...............................................................................................27

*Ashcroft v. Al-Kidd*
    563 U.S. 731 (2011) ...............................................................................................27

*Babb v. Dorman*
    33 F.3d 472 (5th Cir. 1994) ...................................................................................28

*Bd. of Cnty. Comm'rs v. Brown*
    520 U.S. 397 (1997) .................................................................................. 17, 22, 23

*Bennett v. City of Slidell*
    735 F.2d 861 (5th Cir. 1984) .................................................................................21

*Bienkowski v. American Airlines, Inc.*
    851 F.2d 1503 (5th Cir. 1988) ...............................................................................11

*Bledsoe v. City of Horn Lake, Miss.*
    449 F.3d 650 (5th Cir. 2006) .......................................................................... 25, 26

*Boudreaux v. Swift Transp. Co., Inc.*
    402 F.3d 536 (5th Cir. 2005) ...................................................................................3

*Caldwell v. KHOU-TV*
    850 F.3d 237 (5th Cir. 2017) .......................................................................... 13, 14

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ............................................................................................ 2, 3

*City of St. Louis v. Praprotnik*
    485 U.S. 112 (1988) .......................................................................................... 23, 24

*Connick v. Myers*
    461 U.S. 138 (1983) .......................................................................................... 17, 18

*Crisp v. Sears Roebuck & Co.*
    628 F. App'x 220 (5th Cir. 2015) .........................................................................13

*Darden v. City of Fort Worth, Tex.*
    880 F.3d 722 (5th Cir. 2018) .................................................................................28

*EEOC v. LHC Group, Inc.*
    773 F.3d 688 (5th Cir. 2014) .................................................................................13

*Garcia v. Reeves Cnty.*
   *Tex.*, 32 F.3d 200 (5th Cir. 1994) ..................................................................23

*Gee v. Principi*
   289 F.3d 342 (5th Cir. 2002) .......................................................................11

*Graziosi v. City of Greenville Mississippi*
   775 F.3d 731 (5th Cir. 2015) ...................................................................18, 19

*Grutzmacher v. Howard County*
   851 F.3d 332 (4th Cir. 2017) .......................................................................20

*Guadalajara v. Honeywell Int'l, Inc.*
   224 F. Supp. 3d 488 (W.D. Tex. 2016) .........................................................14

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982) ...................................................................................27

*Hernandez v. Yellow Transp., Inc.*
   670 F.3d 644, (5th Cir. 2012) .......................................................................15

*Hunter v. Bryant*
   502 U.S. 224 (1991) ...................................................................................28

*In re Selcraig*
   705 F.2d 789 (5th Cir. 1983) .......................................................................25

*Irby v. Sullivan*
   737 F.2d 1418 (5th Cir. 1984) .....................................................................23

*Irons v. Aircraft Serv. Int'l, Inc.*
   392 F. App'x 305, 308–09 (5th Cir. 2010) ....................................................14

*James v. Tex. Collin Cnty.*
   535 F.3d 365 (5th Cir. 2008) .......................................................................28

*Kanida v. Gulf Coast Med. Personnel LP*
   363 F.3d 568 (5th Cir. 2004) .......................................................................10

*Kinsey v. Salado Indep. Sch. Dist.*
   950 F.2d 988 (5th Cir. 1992) .......................................................................21

*Kovacic v. Villareal*
   628 F.3d 209 (5th Cir. 2010) .......................................................................27

*Lane v. Franks*
   573 U.S. 228 (2014) ...................................................................................18

*Lee v. Reg'l Nutrition Assistance Inc.*
   471 Fed. App'x 310 (5th Cir. 2012) .............................................................15

*Lopez v. Beard & Lane, P.C.*
   2023 WL 6283325 (S.D. Tex. Sept. 26, 2023) ..............................................16

*Maldonado v. Mattress Direct, Inc.*
   2015 WL 1415735 (E.D. La. Mar. 27, 2015) ................................................11

*Malley v. Briggs*
  475 U.S. 335 (1986) .................................................................................28

*Martin v. Thomas*
  973 F.2d 449 (5th Cir. 1992) ...................................................................16

*McClendon v. City of Columbia*
  305 F.3d 314 (5th Cir. 2002) ...................................................................27

*McEvoy v. Spencer*
  124 F.3d 92 (2d Cir. 1997) ......................................................................21

*Monell v. New York City Dep't of Soc. Servs.*
  436 U.S. 658 (1978) .................................................................................16

*Mosley v. Houston Comm. College Sys.*
  951 F. Supp. 1279 (S.D. Tex. 1996 ..........................................................29

*Moyer v. Jos. A. Bank Clothiers, Inc.*
  2014 WL 1661211 (N.D. Tex. Apr. 25, 2014)..........................................12

*Mt. Healthy City Bd. of Educ. v. Doyle*
  429 U.S. 274 (1977) .................................................................................18

*Newport v. Fact Concerts, Inc.*
  453 U.S. 247 (1981) ..........................................................................23, 29

*Nixon v. City of Houston*
  511 F.3d 494 (5th Cir. 2007) ...................................................................19

*Okon v. Harris Cnty. Hosp. Dist.*
  426 F. App'x 312 (5th Cir. 2011) .......................................................21, 22

*Oncale v. Sundowner Offshore Servs., Inc.*
  523 U.S. 75 (1998) ...................................................................................15

*Pearson v. Callahan*
  555 U.S. 223 (2009) .................................................................................27

*Peterson v. City of Fort Worth, Tex.*
  588 F.3d 838 (5th Cir. 2009) ...................................................................17

*Pickering v. Bd. of Educ.*
  391 U.S. 563 (1968) .................................................................................18

*Pierce v. Smith*
  117 F.3d 866 (5th Cir. 1997) ...................................................................27

*Piotrowski v. City of Houston*
  237 F.3d 567 (5th Cir. 2001) ...................................................................17

*Rathjen v. Litchfield*
  878 F.2d 836 (5th Cir. 1989) ...................................................................17

*Rayborn v. Bossier Par. Sch. Bd.*
  881 F.3d 409 (5th Cir. 2018) ...................................................................24

*Reeves v. Sanderson Plumbing Prods., Inc.*
530 U.S. 133 (5th Cir. 2000) ......................................................................13

*Rhodes v. Guiberson Oil Tools*
75 F.3d 989 (5th Cir. 1996) .......................................................................11

*Rivera v. Houston Indep. Sch. Dist.*
349 F.3d 244 (5th Cir.2003) ...................................................................16, 17

*Rosenstein v. City of Dallas*
876 F.2d 392 (5th Cir. 1989) ....................................................................24

*Saige v. Edna Indep. Sch. Dist.*
411 F.3d 178 (5th Cir. 2005) ....................................................................18

*Saketkoo v. Administrators of Tulane Educ. Fund*
31 F.4th 990 (5th Cir. 2022) .....................................................................12

*Schultea v. Wood*
47 F.3d 1427 (5th Cir. 1995) ....................................................................27

*Sellers v. BNSF Ry. Co.*
2013 WL 1181458 (E.D. Tex. Mar. 18, 2013) ...........................................14

*Siegert v. Gilley*
500 U.S. 226 (1991) .................................................................................27

*Stefanoff v. Hays Cnty.*
154 F.3d 523 (5th Cir. 1998) ....................................................................27

*Toronka v. Continental Airlines, Inc.*
411 Fed. App'x 719 (5th Cir. 2011) ..........................................................10

*Vance v. Ball State Univ.*
570 U.S. 421, 427–28 (2013) ....................................................................14

*West v. Atkins*
487 U.S. 42 (1988) ...................................................................................27

*White v. Thomas*
660 F.2d 680 (5th Cir. 1981) ....................................................................25

*Williams v. Dallas Indep. Sch. Dist.*
480 F.3d 689 (5th Cir. 2007) ....................................................................18

*Winters v. Houston Chronicle Pub. Co.*
795 S.W.2d 723 (Tex. 1990) .....................................................................23

*World Wide Street Preachers Fellowship v. Town of Columbia*
591 F.3d 747 (5th Cir. 2009) ....................................................................21

## Statutes

Tex. Gov't Code § 614.022 ..................................................................................................6

Tex. Labor Code § 21.055 ................................................................................................12

Tex. Labor Code § 21.2585(b) .........................................................................................29

## State Cases

*Anderson v. Houston Comm. Coll. Sys.*
    458 S.W.3d 633 (Tex. App.—Houston [1st Dist.] 2015, no pet.) .......................................16

*Colorado County v. Staff*
    510 S.W.3d 435 (Tex. 2017) ...........................................................................................6

*Donaldson v. Tex. Dep't of Aging & Disability Svcs.*
    495 S.W.3d 421 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) .................................14

**DEFENDANTS BEAUMONT INDEPENDENT SCHOOL DISTRICT,**
**DR. SHANNON ALLEN, AND CHIEF JOSEPH MALBROUGH'S**
**MOTION FOR FINAL SUMMARY JUDGMENT**

Defendants Beaumont Independent School District ("Beaumont ISD" or the "District"), Dr. Shannon Allen, and Chief Joseph Malbrough (the "Individual Defendants") (collectively the "Defendants") move for final summary judgment on all claims asserted by plaintiff Shanter Norman, as follows:

## I.
## NATURE AND STAGE OF PROCEEDING

This is an employment dispute arising under Chapter 21 of the Texas Labor Code and the First and Fourteenth Amendments to the United States Constitution. Beaumont ISD terminated Shanter Norman's employment as a police officer in January 2023. Norman sued, alleging that the Defendants retaliated against him for engaging in protected activity, discriminated against him based on his religion, and violated his constitutional rights to free speech and procedural due process. [*See* Dkt. No. 9, ¶¶ 27–48].

The District moved to dismiss Norman's claims pursuant to Rule 12(b)(6) on May 20, 2024. [Dkt. No. 10]. The Individual Defendants moved to dismiss Norman's claims on August 15, 2024, based on qualified immunity and Norman's failure to state a valid claim. [Dkt. No. 18]. Both motions are fully briefed and are currently pending before the Court.

Under the Court's First Amended Scheduling Order, discovery is set to close on February 21, 2025. [Dkt. No. 23]. To date, Norman has not engaged in any discovery beyond serving his Rule 26 Initial Disclosures on February 5, 2024, and the deadline for serving discovery has passed.

The Defendants now move for final summary judgment because Norman cannot raise a genuine issue of material fact as to each essential element of his claims against Beaumont ISD or the Individual Defendants.

## II.
## <u>ISSUES PRESENTED</u>

1.    Whether Norman can create a genuine issue of material fact as to his Chapter 21 religious discrimination claim based on disparate treatment, given that Norman indisputably committed a terminable offense and cannot identify any comparator outside of his protected class who allegedly received more favorable treatment.

2.    Whether Norman can create a genuine issue of material fact as to his Chapter 21 retaliation claim, given that he cannot show a causal connection between any protected activity and any adverse employment action as required to support Norman's retaliation claim, where Norman did not assert his right to be free from religious discrimination before suffering an adverse employment action.

3.    Whether Norman can create a genuine issue of material fact that Beaumont ISD's legitimate, nondiscriminatory, and nonretaliatory reason for terminating his employment is pretextual, given that he has no evidence that the District's reason is false or unworthy of credence.

4.    Whether Norman's Chapter 21 claims against the Individual Defendants fail as a matter of law, given that Chapter 21 does not allow for individual liability.

5.    Whether Norman can create a genuine issue of material fact that Beaumont ISD violated his First Amendment rights, given that he did not engage in protected speech, and given that he cannot show that the Board ratified, or was otherwise involved in, any illegal conduct.

6.    Whether Norman can create a genuine issue of material fact that Beaumont ISD violated his due process rights under the Fourteenth Amendment, given that the facts giving rise to his termination are not in dispute, and given that Norman appealed his termination through the District's formal grievance policy.

7.    Whether the Individual Defendants are entitled to qualified immunity from Norman's § 1983 claims against them, given that Norman has no evidence that either of the Individual Defendants took any action that violated Norman's clearly established constitutional rights.

8.    Whether Norman can recover punitive damages against the District.

## III.
## <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper when the pleadings and any evidence on file demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citations omitted). Although "a party seeking summary judgment always bears the initial responsibility of informing the district court

2

of the basis for its motion, and identifying the portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact," there is "no express or implied requirement [] that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323 (emphasis original); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 54–45 (5th Cir. 2005) ("Swift met [its] burden by asserting in its motion for summary judgment that Boudreaux could not prove that Swift had breached a duty that it owed to him, and claiming that there 'is an absence of evidence to support the claims that Plaintiff is asserting against Swift.'").

To that end, the Supreme Court has held that "[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317. That is, where discovery has yielded no evidence to support an essential element of a claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In that case, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Id.* at 317-18.

## IV.
## FACTUAL BACKGROUND

Beaumont ISD is public school district located in Jefferson County, Texas.  Defendant Dr. Shannon Allen serves as the District's Superintendent of Schools.  [Dkt. No. 9, ¶ 12].  Dr. Allen reports to the District's elected Board of Trustees. *See* https://www.bmtisd.com/domain/122.

### A.    Beaumont ISD's Police Department

Beaumont ISD operates its own police department (the "Police Department") in accordance with section 37.081 of the Texas Education Code. [*See* Policy CKEA (Local), attached as **Exhibit 1**].

The chief of police oversees the administration of the Police Department.  [*See id.*].  At all times relevant to this lawsuit, defendant Joseph Malbrough served as the chief of police.  The chief's duties include overseeing the maintenance of "a manual that describes and sets forth operational procedures, rules, and regulations pertaining to the administration of police services."  [*Id.*].  The policy manual contains the Police Department's code of conduct for officers (Policy 2.1), internal investigation process (Policy 2.4) and employee disciplinary process (Policy 2.5).  [*See* Policy Manual Excerpts, attached as **Exhibit 2**].

Policy 2.4 dictates that "[a]ll complaints alleging a violation of the law or policy will be investigated" and "will usually be handled through the chain of command, beginning with the first-line supervisor."  [Ex. 2 at BISD 0031].  Policy 2.4 also states that any "[d]isciplinary action shall be determined by the seriousness of the violation or the extent of injury to the victim, and the officer's prior disciplinary history" and "shall be commensurate with the circumstances surrounding the incident and in consideration of the employee's service record and prior sustained complaints."  [*Id.* at BISD 0038].

Policy 2.5 allows for various options for officer discipline, including "documented oral reprimand; counseling; and training," "written reprimand," "demotion or suspension without pay," and "dismissal from department."  [Ex. 2 at BISD 0041].  With respect to suspensions, the policy states:

> G.  Demotion or suspension without pay
>
> 1. If the situation warrants, the Chief of Police, in consultation with the Superintendent, may demote an employee, suspend without pay, or take other measures normally considered equivalent, such as the forfeiture of vacation or compensatory time.
>
> 2. Suspensions without pay will normally apply to a period of up to 15 days, as determined by the Chief of Police and Beaumont ISD Superintendent.
>
> 3. If an employee becomes a candidate for suspension a second time within one year after the first suspension, the employee may be dismissed.

[*Id.* at BISD 0043].

All District employees not hired under a contract are employed on an at-will basis.  [*See* Policy DCD (Local), attached as **Exhibit 3**].  "At-will employees may be dismissed at any time for any reason not prohibited by law or for no reason, as determined by the needs of the District."  [*Id.*].  Police Department officers and employees aggrieved by employment decisions are entitled to take advantage of the District's formal grievance policy for employees.  [*See* Policy DGBA (Local), attached as **Exhibit 4**].  Beaumont ISD Policy DGBA (Local) creates a three-level grievance process whereby an at-will employee, such as Norman, can file complaints and/or appeal their termination.  [*See id.*].  The formal grievance process culminates in a hearing before the Board of Trustees, with an opportunity for the Board to uphold or reverse the underlying decision of the administration.  [*See id.* at BISD 0053-54].

**B.    Norman's Social Media Activity and Suspension**

Norman began working for the Police Department in 2020.  [*See* Norman Affidavit, attached as **Exhibit 5**].  By late 2022, Norman had seemingly grown disgruntled with the Department, as evidenced by a public post he made on his personal Facebook page on October 20, 2022:



[Facebook Post, attached as **Exhibit 6**].  Multiple members of the Police Department and other local law enforcement agencies saw Norman's post and responded negatively.  [*See* Law Enforcement Statements, attached as **Exhibit 7**].  One of Norman's colleagues, Sergeant Kenderick Hartfield, described Norman's post as "disrespectful, unprofessional and would cause a discord in our department or have the Beaumont ISD community, outside community and or (*sic*) other agencies we work with looking at our department in a[n] unprofessional way."  [*See* Hartfield Affidavit, attached as **Exhibit 8**].  Additionally, officers and leaders at Norman's assigned campus, Beaumont United High School, were concerned that Norman's post implied that his supervisors (either on the campus or within the Police Department) lacked integrity and accountability.  [Ex. 7 at BISD 0060-61, BISD 0063].  Also, some of Norman's former coworkers—officers currently with the Jefferson County Sheriff's Office—even weighed in on the controversy, with one former coworker stating that Norman "was always doing stuff like that for attention."  [*Id.* at BISD 0062].  A representative from the Jefferson County District Attorney's Office also observed that Norman's online conduct could cause parents to "start complaining that they don't trust the BISD PD on [i]nvestigations," and recommended that the Police Department "immediately address the impact this could have with [Norman]."  [*Id.*].

Due to the negative feedback received by the Police Department, Lieutenant Pamela Haynes filed a formal complaint against Norman for his "disrespectful" post.  [*See* Haynes Complaint, attached as **Exhibit 9**].[1]  The complaint was submitted to the Internal Affairs Department ("IAD") and assigned case number F22-23.01.  [*Id.*].

---

[1] Under the Texas Government Code, peace officers may only be disciplined based on a complaint if (i) the complaint is in writing and signed by the person making the complaint, (ii) the officer is notified of the complaint; (iii) the complaint is investigated, and (iv) there is evidence to prove the alleged misconduct.  *See* TEX. GOV'T CODE §§ 614.022, .023.  However, "[n]othing in the statute requires the complaint to be served before discipline is imposed or precludes disciplinary action while an investigation is ongoing.  Nor does the statute require an opportunity to be heard before disciplinary action may be taken."  *Colorado County v. Staff*, 510 S.W.3d 435, 454 (Tex. 2017).  In other words, Chapter 614 is a notice statute, not an entitlement to due process.  *Id.*  Additionally, the Texas Supreme Court has rejected the notion that "the person making the complaint" must be "the victim of the alleged misconduct."  *Id.* at 451.

On October 25, 2022, Lt. Haynes directed Norman to provide a written statement in response to the IAD investigation. [*See* Emails re: Investigation, attached as **Exhibit 10**]. Norman refused to provide a written statement in response to the directive. [*Id.*]. Lt. Haynes notified Chief Malbrough of Norman's refusal to cooperate with the investigation on November 4, 2022. [*See* Investigation Extension Request, attached as **Exhibit 11**]. Norman provided his written statement later that afternoon, noting only that his Facebook post was "a prayer to [him]self" and that it "did not single out any agency or supervisors of my present or previous employment." [*See* Norman Statement, attached as **Exhibit 12**].

Chief Malbrough issued an investigation summary on December 12, 2022. [*See* Investigation Summary, attached as **Exhibit 13**]. Chief Malbrough's investigation concluded that the allegations of misconduct as set forth in Lt. Haynes's complaint were substantiated. [*Id.* at BISD 0077]. Specifically, Chief Malbrough noted that Norman's "unprofessional actions undermine our Department's credibility and effectiveness as a law enforcement agency in this community," which "demonstrate[d] serious misconduct and extreme malfeasance" as set forth in the Police Department's code of conduct for officers and the District's code of conduct. [*Id.*; *see also* Ex. 2 at BISD 0015-29; Beaumont ISD Policy DH (Local), attached as **Exhibit 14**]. Namely, Chief Malbrough found Norman's post to be violation of the following:

- **Policy 2.1 Rules of Conduct section V.F.4, Insubordination:** "Employees shall promptly obey all lawful orders and directions given by supervisors and radio dispatchers. The failure or deliberate refusal of employees to obey such orders shall be deemed insubordination and is prohibited. Flouting the authority of a supervisor by displaying obvious disrespect or by disputing their orders shall likewise be deemed insubordination."

- **Policy 2.1 Rules of Conduct section V.G.11, Conduct and Behavior:** "Employees, whether on-duty or off-duty, shall follow the ordinary and reasonable rules of good conduct and behavior and shall not commit any act in an official or private capacity tending to bring reproach, discredit, or embarrassment to their profession or the department. Employees shall follow established procedures in carrying out their duties

as police officers and/or employees of the department and shall at all time[s] use sound judgment."

- **Policy 2.1 Rules of Conduct section V.H.38:** "Employees shall treat other members of the department with respect. They shall be courteous, civil and respectful of their superiors, subordinates, and associates, and shall not use threatening or insulting language."

- **Board Policy DH (Local) and the Beaumont ISD Employee Handbook:** "As role models for the district's students, employees are responsible for their public conduct even when they are not acting as district employees. Employees will be held to the same professional standards in their public use of electronic media as they are for any other public conduct. If an employee's use of electronic media interferes with the employee's ability to effectively perform his or her job duties, the employee is subject to disciplinary action, up to and including termination of employment."

[Ex. 13 at BISD 076-0077; *see also* Ex. 2 at BISD 0019-20, BISD 0023; Ex. 14].  Chief Malbrough determined that these policy violations warranted a "10 day suspension without pay starting Monday, December 12, 2022 and ending Friday, January 6, 2023." [*Id.*].  The investigation summary advised Norman that, pursuant to Police Department Policy 2.5, "if an employee becomes a candidate for suspension a second time within one year after the first suspension, the employee may be dismissed." [*Id.*; *see also* Ex. 2 at BISD 0043].

## C.    Norman's Insubordination and Termination

On December 9, 2022 (*i.e.*, during the pendency of the investigation that ultimately resulted in his 10-day suspension), Norman was assigned to patrol a basketball game at Beaumont United High School, during which a student became disruptive and threatened physical harm to other attendees in the gymnasium.  [*See* January 2023 Investigation Summary, attached as **Exhibit 15**].  Assistant Principal Derrick Chaison was unable to de-escalate the situation and went to the foyer to solicit law enforcement assistance.  [*Id.*; *see also* Chaison Written Statement, attached as **Exhibit 20**].

The first officer Chaison encountered in the foyer was Norman, who was standing near the concession stand.  [*See* Stills from Hallway Footage, attached as **Exhibit 16**]. Chaison looked directly at Norman and asked him to assist with the situation.  [Ex. 20].  Norman told Chaison that he was on

a break and motioned to other officers working the security screen at the building entrance.  [*Id.*]. Another officer, Deputy Shaleese Turner, was nearby, and went with Chaison to address the situation. [*See* Turner Statement, attached as **Exhibit 17**].

Corporal Reginald Boseman directed Norman to provide backup to Deputy Turner, and Norman refused.  [*See* Boseman Statement, attached as **Exhibit 18**].  Cpl. Boseman then submitted a formal complaint to the Police Department regarding Norman's insubordination at the basketball game.  [*See* Boseman Complaint, attached as **Exhibit 19**].

Chief Malbrough reviewed statements from Boseman, Norman, Turner, and two other officers, as well as video surveillance footage from the foyer outside the gym.  [*See* Ex. 15; *see also* Chargois Written Statement, attached as **Exhibit 21**; Smith Written Statement, attached as **Exhibit 22**]. In his statement, Norman admitted that he refused to respond to the situation with the student because he was "on a quick break."  [*See* Norman Written Statement, attached as **Exhibit 23**].  Norman also admitted that he had an exchange with Cpl. Boseman in the foyer (though he did not elaborate on the details) and that Cpl. Boseman was "upset about sending a female Deputy to assist alone." [*Id.*].

On January 5, 2023, Chief Malbrough determined that Boseman's allegation of insubordination by Norman was substantiated.  [*See* Ex. 15].  As a result, and in accordance with Police Department Policy 2.5, Chief Malbrough terminated Norman's employment, effective immediately. [*Id*].  Norman appealed Chief Malbrough's decisions to suspend him and subsequently terminate his employment through the District's formal grievance process, which culminated in the Beamont ISD Board of Trustees upholding the termination decision at a Board meeting on April 20, 2023.  [*See* Notice of Level Three Hearing, attached as **Exhibit 24**; April 20, 2023 Board Minutes, attached as **Exhibit 25** at BISD 0103; Level One Grievance on Suspension, attached as **Exhibit 27**; Level One Grievance on Termination; attached as **Exhibit 28**].  This lawsuit followed.

# V.
## ARGUMENTS AND AUTHORITY

The Court should grant final summary judgment in favor of the Defendants because Norman cannot create a genuine issue of material fact as to each element of his claims, and because several of his claims otherwise fail as a matter of law.

**A.    Norman cannot create a genuine issue of material fact that Beaumont ISD treated him less favorably than similarly situated employees because of his religious beliefs.**

Norman alleges that the District subjected him to disparate treatment based on his religious beliefs. [*See* Dkt. 9, ¶¶ 37–39]. A *prima facie* case of religious discrimination based on disparate treatment requires Norman to prove that (i) he was a member of a protected class; (ii) he was qualified for his position; (iii) he was subjected to an adverse employment action; and (iv) he was treated less favorably than similarly situated employees outside his protected class.[2]  *See Toronka v. Continental Airlines, Inc.*, 411 Fed. App'x 719, 723 (5th Cir. 2011); *see also Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004) (the ultimate question in a Title VII disparate treatment case is whether a defendant took the adverse employment action against a plaintiff *because of* his protected status).  Norman cannot create a genuine issue of material fact as to the second and fourth elements of his claim.

### 1.    Norman's repeated misconduct rendered him unqualified for his position.

Under Police Department Policy 2.5, an employee who is suspended or eligible for suspension twice in one year for misconduct may be terminated from the police force.  [*See* Ex. 2 at BISD 0043].  Accordingly, Norman's repeated and undisputed misconduct—including one act of conduct that reflected poorly on the department and one act of insubordination—rendered him unqualified to continue in his position, and precludes him from establishing the second element of his religious discrimination claim.  *See Maldonado v. Mattress Direct, Inc.*, 2015 WL 1415735, *4 (E.D. La. Mar. 27,

---

[2] The Texas Legislature modeled Chapter 21 of the Texas Labor Code after Titel VII of the Civil Rights Act of 1964.  TEX. LABOR CODE § 21.001(1); *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 269 (Tex. App.—Fort Worth 2004, no pet.).  Therefore, the Court may look to cases interpreting Title VII when reviewing Norman's religious discrimination claim.  *Caballero v. Cent. Power & Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993).

2015) ("The requirements for establishing job qualification are case-specific and this Court concludes that there is sufficient evidence to support the conclusion that the various instances of misconduct documented in the record support a finding that Plaintiff was not qualified for his position at the time of his discharge.  The Court is aware of no precedent that would hamstring employers in the manner suggested by Plaintiff, opening them to suit for liability for termination of an employee engaged in misconduct who otherwise performs at adequate sales levels."); *see also, e.g., Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 n.3 (5th Cir. 1988) (noting that circumstances may render an employee "unfit" for the position for which he was hired), *abrogated on other grounds by Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir. 1996) (en banc).  Summary judgment should be granted.

### 2. Norman has no evidence that he was treated less favorably than similarly situated employees outside his protected class.

Norman has never alleged that Beaumont ISD treated him any differently than similarly situated employee outside his protected class.  As the District noted in its Rule 12(b)(6) motion to dismiss, Norman's failure to plead this essential element of his discrimination claim is fatal to the claim.  [*See* Dkt. No. 10].  And now, having failed to obtain (or request) any evidence to support this essential element of his claim during discovery, Norman is not entitled to present his claim to a jury, and summary judgment is appropriate.

### B. Norman cannot create a genuine issue of material fact that Beaumont ISD retaliated against him for engaging in protected activity.

Norman alleges the District retaliated against him after he made his Facebook post and filed an EEOC complaint.  [Dkt. No. 9, ¶ 6].  To prevail on a retaliation claim under Chapter 21 of the Texas Labor Code, a plaintiff must prove that (i) he engaged in activity protected, (ii) he suffered an adverse employment action, and (iii) there was a causal link between the adverse action and the protected activity.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).  In this context, "protected activity" means opposing a discriminatory practice; making or filing a charge of discrimination; filing a

complaint; or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. TEX. LABOR CODE § 21.055.

Norman has no evidence that he engaged in protected activity *before* the District terminated his employment (or took any other alleged adverse employment action against him). To the extent that he contends that his Facebook post constituted protected activity within the meaning of the Texas Labor Code, it did not. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 786–87 (Tex. 2018) ("Magic words are not required to invoke the [Labor Code]'s anti-retaliation protection, but complaining only of harassment, hostile environment, discrimination, or bullying is not enough.") (quotations omitted). Norman's Facebook post did not oppose a discriminatory practice, nor did it have anything to do with an investigation or internal complaint. Instead, Norman simply stated that he prayed he would be a better supervisor than his own. [*See* Ex. 6]. That does not constitute protected activity within the meaning of Chapter 21. *See* TEX. LABOR CODE § 21.055.

Norman also cannot rely on his EEOC charge of discrimination to support a retaliation claim because he filed it on June 30, 2023—several months *after* the District terminated him on January 5, 2023. [*See* EEOC Charge, attached as **Exhibit 26**]. As a matter of law, an adverse decision that predates a protected activity cannot be causally related to the challenged adverse action. *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022). Also, Norman's claim that the District discriminated against *him* by allegedly terminating *other* fact witnesses [*see* Dkt. No. 9, ¶¶ 21–22] also fails as a matter of law. *See, e.g., Moyer v. Jos. A. Bank Clothiers, Inc.*, 2014 WL 1661211, *3 (N.D. Tex. Apr. 25, 2014), *aff'd*, 601 Fed. App'x 247 (5th Cir. 2015) ("Defendant contends that Moyer has offered no evidence that her relationship with Cortez was sufficiently close that a threat to Cortez's employment could meet the *Burlington* "materially adverse employment action" standard. The court agrees. The United States Supreme Court has declined to identify a fixed class of relationships for which third-party reprisals are unlawful. The Court has, however, stated that firing a close family

member will almost always meet the *Burlington* standard, *but inflicting a milder reprisal on a mere acquaintance will almost never do so.*  In her response, Moyer states that Cortez was her friend, associate, and *designated witness.*") (emphasis added) (citations omitted).

Accordingly, Norman has no evidence that he engaged in protected activity that caused an adverse employment action.  The Court should grant summary judgment in favor of the District.

**C.    Beaumont ISD had a legitimate, nondiscriminatory, and nonretaliatory reason for terminating Norman's employment, and Norman cannot create a genuine issue of material fact as to pretext.**

Even assuming that Norman could create a genuine issue of material fact as to each element of his religious discrimination and retaliation claims (he cannot), the evidence shows that Beaumont ISD had a legitimate, nondiscriminatory, and nonretaliatory reason for terminating Norman's employment. Under the *McDonnell Douglas* burden-shifting framework, if (and only if) Norman establishes a *prima facie* case, a presumption of discrimination arises and the burden shifts to the District to articulate a legitimate reason for its actions.  *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 701 (5th Cir. 2014).  The District's burden is one of production, not persuasion, and can involve no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (5th Cir. 2000).  Once the District offers a legitimate reason for its employment decision, the presumption of discrimination (or retaliation) disappears from the case, and the burden shifts back to Norman to prove, by a preponderance of the evidence, that the District's proffered reason is pretextual.  *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).  "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."  *Id.* (quoting *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010)).

A proven violation of an employer's policy constitutes a legitimate, nondiscriminatory, and nonretaliatory reason to terminate an employee's employment.  *See Crisp v. Sears Roebuck & Co.*, 628 F. App'x 220, 224 (5th Cir. 2015); *Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 308–09, 312–13 (5th

Cir. 2010); *see also Sellers v. BNSF Ry. Co.*, 2013 WL 1181458, *13–14 (E.D. Tex. Mar. 18, 2013) (finding that evidence of violations of company policy provided a legitimate, non-retaliatory reason for the discharge of an employee who alleged her termination was in retaliation for bringing a sexual harassment suit); *Guadalajara v. Honeywell Int'l, Inc.*, 224 F. Supp. 3d 488, 509 (W.D. Tex. 2016) (finding that evidence of violation of violence prevention policy constituted a legitimate, non-retaliatory reason for the discharge of an employee who alleged his termination was in retaliation for reporting sexual harassment). Here, the Police Department determined that Norman violated Policy 2.5 at least twice between October 2022 and December 2022. [*See* Ex. 13 at BISD 0077; Ex. 15 at BISD 0089]. Accordingly, Beaumont ISD had a legitimate, nondiscriminatory, and nonretaliatory reason for terminating Norman's employment.

Norman has no evidence that the District's proffered reason is false or unworthy of credence, or otherwise pretextual. *See Caldwell*, 850 F.3d at 242. Summary judgment is therefore appropriate.

**D.    Norman cannot create a genuine issue of material fact that Beaumont ISD subjected him to a hostile work environment based on his religion.**

Norman claims the District subjected him to a hostile work environment by: (i) providing false and exaggerated criticism of his job performance; (ii) investigating the complaints related to his social media post; (iii) suspending him without pay; and (iv) requiring him to surrender his taser. [Dkt. No. 9, ¶¶ 18–21].

General mistreatment in the workplace is not actionable under Title VII or the Texas Labor Code. *Donaldson v. Tex. Dep't of Aging & Disability Svcs.*, 495 S.W.3d 421, 445 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). To prevail on a "hostile work environment" claim based on a supervisor's alleged harassment, Norman must prove that (i) he is member of a protected group; (ii) he was the victim of unwelcome harassment; (iii) the harassment was based on his protected characteristic; and (iv) the harassment affected a "term, condition, or privilege" of his employment. *See Vance v. Ball State Univ.*, 570 U.S. 421, 427–28 (2013); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644,

651 (5th Cir. 2012).  In other words, harassing conduct is not actionable unless the conduct was directed at Norman *because of* his protected status.

Further, for harassment to affect a "term, condition, or privilege of employment," it must be sufficiently "severe or pervasive to alter the conditions" of Norman's work environment and create an objectively abusive or hostile working environment.  *Id.*  To be actionable, the work environment must be "permeated" with "discriminatory intimidation, ridicule, and insult." *Lee v. Reg'l Nutrition Assistance Inc.*, 471 Fed. App'x 310, 311 (5th Cir. 2012).  Isolated incidents will not support a claim. *Id.*  In determining whether the environment has become impermissibly hostile, courts look at the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651.

In this case, Norman has no evidence that the Defendants subjected Norman to *any* harassment, much less severe or pervasive harassment motivated by his unidentified religion.  Nor can he create a genuine issue of material fact that his work environment was "permeated" with "discriminatory intimidation, ridicule, and insult," as required to prevail on a hostile work environment claim.  To the contrary, the allegedly "hostile" actions that Norman complains about are nothing more than ordinary administrative functions of the department (*e.g.,* evaluating employees' performance, investigating complaints, issuing disciplinary consequences for misconduct, and enforcing weapons policies).  And to the extent Norman claims the Police Department carried out these mundane administrative functions in a way that was unfair to him, it is important to note that the Texas Labor Code does not create a "general civility code" for the workplace.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

Because Norman has no evidence to support any of the harassment-based elements of his hostile work environment claim, the Court should grant summary judgment in favor of the District.

E.    **Norman's religious discrimination and retaliation claims against the Individual Defendants fail as a matter of law because the Texas Labor Code does not allow for individual liability.**

Chapter 21 of the Texas Labor Code does not allow for individual liability against employees for alleged religious discrimination or retaliation. *Anderson v. Houston Comm. Coll. Sys.*, 458 S.W.3d 633 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("It is well established in Texas that an individual cannot be held personally liable under [Chapter 21 of the Texas Labor Code]."); *Lopez v. Beard & Lane, P.C.*, 2023 WL 6283325, at *4 (S.D. Tex. Sept. 26, 2023) ("Like the Fifth Circuit, Texas courts have held that only employers, not individual employees, can be held liable for [Chapter 21] violations.") (citing cases). Because Superintendent Allen and Chief Malbrough cannot constitute "employers" for purposes of Norman's Chapter 21 claims, these claims fail as a matter of law, and the Individual Defendants are entitled to summary judgment on Norman's Chapter 21 claims against them.

F.    **Norman cannot create a genuine issue of material fact that Beaumont ISD violated his First Amendment rights because Norman did not engage in protected speech, and because Norman cannot establish that the Board ratified, or was otherwise involved in, any illegal conduct.**

Norman alleges the District discriminated and retaliated against him for engaging in speech protected by the First Amendment. [Dkt. No. 9, ¶¶43–48]. Section 1983 is the vehicle by which a plaintiff must press an alleged violation of a constitutional right. *Martin v. Thomas*, 973 F.2d 449, 452-53 (5th Cir. 1992). But liability only attaches to the *school district's* actions—Section 1983 does not permit holding a local governmental entity liable for an injury inflicted by its employees based on a theory of *respondeat superior. See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir.2003). To prevail on a Section 1983 claim, a plaintiff must prove than an alleged constitutional violation directly resulted from the execution of an "official" policy or custom, that the entity's "final policymaker" approved of or sanctioned the policy or custom, and that the final policymaker acted with "deliberate indifference" to federally protected rights, thus causing the plaintiff's injury. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th

Cir. 2001). Under Texas law, the policymaking authority for a school district is the board of trustees. *Rivera*, 349 F.3d at 247.

Norman must therefore show that: (i) he engaged in constitutionally protected speech; (ii) the District discriminated or retaliated against him for engaging in such speech via a Board-adopted unconstitutional policy or a known, persistent, and widespread practice that was "so common and well-settled as to constitute a custom that fairly represents [Board] policy;" and (iii) the Board's deliberate indifference to adopting such a policy or custom was the moving force behind Norman's First Amendment injuries. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). Norman cannot prove any of these elements. First, Norman's Facebook post and subsequent grievance do not constitute constitutionally protected speech. Second, the Beaumont ISD Board of Trustees was not involved in the decision to suspend Norman or to terminate his employment, and the Board's decision to deny Norman's grievance appeal concerning these decisions does not give rise to municipal liability against the District as a matter of law. And, third, without a Board action giving rise to a constitutional injury, the final element of Norman's First Amendment claim is moot.

### 1.  Norman did not engage in protected speech.

As an initial matter, Norman cannot show that his Facebook post constituted protected speech. The First Amendment prohibits government employers from taking actions that are designed to "suppress the rights of public employees [to] participat[e] in public affairs." *Connick v. Myers*, 461 U.S. 138, 145–46 (1983). It does not, however, prevent government employers from taking actions in response to an employee's expression that does *not* involve matters of public concern. *See id.* The Fifth Circuit has held that "the courts will not interfere with personnel decisions when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Rathjen v. Litchfield*, 878 F.2d 836, 841 (5th Cir. 1989) (citations and

quotations omitted); *see also Saige v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005) ("When a public employee speaks in his capacity as an employee and addresses personal matters such as personnel and employment disputes, rather than in his capacity as a citizen on a matter of public interest, his speech falls outside the protection of the First Amendment."); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (complaints over the handling of school athletic funds were not protected by First Amendment because employee raised them in the course of performing his job duties). "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 240 (2014) (citations omitted). "[P]ublic concern must be determined by the content, form, and context of a given statement . . .." *Connick*, 461 U.S. at 147–48.

Accordingly, to establish that his social media posts are protected by the First Amendment, Norman must prove that (i) the speech was not a part of his job duties; (ii) the speech involved a matter of public concern; and (iii) his personal interests outweigh the District's interests in an efficient and orderly workplace. *See Connick*, 461 U.S. at 146–47; *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Norman cannot satisfy the second and third elements of his First Amendment claim because his Facebook post did not involve a matter of public concern, and caselaw dictates that police departments have a strong interest in maintaining efficiency and good relationships in the workplace.

For example, in *Graziosi v. City of Greenville Mississippi*, 775 F.3d 731 (5th Cir. 2015), a police officer posted a series of posts and comments on Facebook criticizing her chief of police after he did not allow officers to use their patrol cars to attend the funeral of a police officer killed in the line of duty. *Id.* at 736. The City ultimately terminated her for making these posts, including the following:

> [W]e had something then that we no longer have ... LEADERS. I don't know that trying for is worth it. In fact, I am amazed everytime [sic] I walk into the door. The

thing is the chief was discussing sending officers on Wednesday (after he suspended me but before the meeting was over). If he suddenly decided we "couldn't afford the gas" (how absurd—I would be embarrassed as a chief to make that statement) he should have let us know so we could have gone ourselves. Also, you'll be happy to know that I will no longer use restraint when voicing my opinion on things. Ha!

*Id.* at 734.

The police officer sued, alleging that the City terminated her for engaging in protected speech, in violation of the First Amendment. The district court granted summary judgment in favor of the City, finding that the police officer spoke in her capacity as a public employee, rather than a private citizen, and that her posts did not address a matter of public concern. *Id.* at 735. The district court also found that there was evidence that the police officer's post caused actual disruption, and that the police department's legitimate interest in maintaining discipline and good working relationships within the department outweighed the officer's interest in speaking as a citizen on a matter of public concern. *Id.*

The Fifth Circuit affirmed, finding that the Facebook posts were not speech on a matter of public concern because they were made within the context of a private employer-employee dispute and because the officer's "statements did not reveal that Chief Cannon was not faithfully discharging his duties nor that the city leaders were mismanaging funds, thus causing the budgetary issues that she contends were the focal point of her posts." *Id.* at 738. The Court further held that even if the police officer had spoken as a citizen on a matter of public concern, the police department justifiably terminated her to prevent insubordination within the department. *Id.* The court reasoned that because "police departments function as paramilitary organizations charged with maintaining public safety and order, they are given *more* latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." *Id.* (citing *Nixon v. City of Houston,* 511 F.3d 494, 498 (5th Cir. 2007)) (emphasis added) (cleaned up).

Similarly, in *Grutzmacher v. Howard County*, 851 F.3d 332 (4th Cir. 2017), the plaintiff alleged that the County's fire department terminated him for making certain social media posts, in violation of the First Amendment. While watching a gun control debate, the plaintiff (a battalion chief) posted the following on Facebook: "My aide had an outstanding idea . . . let's all kill someone with a liberal . . . then maybe we can get them outlawed too!  Thank of the satisfaction of beating a liberal to death with another liberal . . . it's almost poetic." *Id.* at 338.  A few minutes later, someone commented: "But . . . was it an 'assault liberal'?  Gotta pick a fat one, those are the 'high capacity' ones.  Oh . . . pick a black one, those are more 'scary.'  Sorry had to perfect on a cool idea!"  *Id.*  The plaintiff "liked" the comment, and replied, "Lmfao! Too Cool []!"  *Id.*  Two department employees forwarded the Facebook posts to another battalion chief, stating: "Chief, not sure this is something that should be displayed from one of our battalion chiefs."  *Id.*  Ultimately, the department directed the plaintiff to remove the posts, and he did.  However, he then posted the following:

> To prevent further butthurt and comply with a directive from my supervisor, a recent post (meant entirely in jest) has been deleted.  So has the complaining party.  If I offend you, feel free to delete me.  Or converse with me.  I'm not scared or ashamed of my opinions or political leaning, or religion.  I'm happy to discuss any of them with you.  If you're not man enough to do so, let me know, so I can delete you.  That is all.  Semper Fi! Carry On.

*Id.*  The fire department ultimately terminated the plaintiff for his social media activity.  *See id.*

The Fourth Circuit concluded "that the Department's interest in efficiency and preventing disruption outweighed Plaintiff's interest in speaking in the manner he did regarding gun control and the Department's social media policy."  *Id.* at 345–47.

Here, similar to *Graziosi*, Norman's speech was more akin to an employee-employer dispute than a matter of public concern.  And as in *Graziosi* and *Grutzmacher*, the District's police department has an interest in preventing insubordination and maintaining efficiency in its workforce—especially when speech negatively provokes the community, as it did here.  [*See* Exs. 7-8; Ex. 13 at BISD 0075].  Accordingly, because Norman, a police officer, criticized his employer, the police department—and

because his Facebook post did not address anything that could be viewed as a "matter of public concern"—Norman did not engage in protected speech. *See, e.g., Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 994 (5th Cir. 1992) (noting that the "government's interests more easily outweigh the employee's" in cases that "involve[e] public employees who occupy policymaking or confidential positions"); *McEvoy v. Spencer*, 124 F.3d 92, 103 (2d Cir. 1997) ("That the nature of the employee's position is important to the free speech balancing test should not be surprising. Common sense tells us that the expressive activities of a highly placed supervisory, confidential, policymaking, or advisory employee will be more disruptive to the operation of the workplace than similar activity by a low level employee with little authority or discretion.").

### 2.    Norman's alleged constitutional injury was not is not traceable to Beaumont ISD's Board of Trustees.

Even if Norman's Facebook post did constitute protected speech, his claim still fails because he cannot prove that the District's Board approved, adopted, or ratified any actions that allegedly caused his injuries.  In order to establish municipal liability under § 1983, Norman "must show that the District had a policy or custom that caused [his] constitutional deprivation." *Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x 312, 316 (5th Cir. 2011) (per curiam) (citing *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 (5th Cir. 2009)).  That is, Norman must prove that (i) the District had a policy or custom, of which (ii) a policymaker can be charged with actual or constructive knowledge, and (iii) a constitutional violation was the 'moving force' behind the policy or custom. *Id.* (citing *World Wide Street Preachers Fellowship*, 591 F.3d at 752).  An "official policy for purposes of § 1983 liability [is] ' '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.' ' *Id.* (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)).  Furthermore, "[t]he causation prong of municipal liability requires a plaintiff to 'show that the municipal action was taken with the requisite degree of culpability

and must demonstrate a *direct causal link* between the municipal action and the deprivation of federal rights.'" *Id.* at 316–17 (quoting *Brown*, 520 U.S. at 404).  And while "proof that a municipality's legislative body . . . has intentionally deprived a plaintiff of a federally protected right" will establish municipal liability under § 1983, a plaintiff must still "establish the state of mind required to prove the underlying violation." *Brown*, 520 U.S. at 405.

Norman's § 1983 claim against the District stems from one of two actions: his initial suspension and termination, or the Board's decision to deny his appeal of the suspension and termination.  If the former, the evidence clearly shows that it was Chief Malbrough, not the Board, who suspended Norman and later terminated his employment.  [*See* Ex. 13 at BISD 0077; Ex. 15 at BISD 0089].  Chief Malbrough's decisions were consistent with Police Department Policy 2.5 and Board Policy DCD (Local).  [*See* Ex. 2 at BISD 0043; Ex. 3].  And to the extent Norman would allege that Chief Malbrough's allegedly unlawful actions were the result of authority delegated to him by a policy, practice, or custom of the District, this theory of liability fails.  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Brown*, 520 U.S. 405 (internal citations omitted). Accordingly, in order to prevail on a § 1983 claim "on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice."  *Id.* at 407 (internal citations omitted).  Here, with respect to his suspension, Norman has no evidence that the Board had any knowledge of the contents of the Police Department Policy Manual, let alone adopted or approved it.  With respect to the termination, Norman has no evidence that the Board's acted with "deliberate indifference" as to any known or obvious consequences of adopting Policy DCD (Local).  To the contrary, Policy DCD (Local) is

entirely consistent with longstanding state and federal precedent concerning an at-will employment relationship such as the one Norman had with the District.  *See, e.g. Garcia v. Reeves Cnty., Tex.*, 32 F.3d 200 (5th Cir. 1994); *Irby v. Sullivan*, 737 F.2d 1418 (5th Cir. 1984); *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723 (Tex. 1990).  Norman therefore cannot prevail on a § 1983 claim based on his original suspension and/or termination.

Regarding the second potential theory of liability, any purported § 1983 claim arising from the Board's action to deny Norman's grievance concerning his suspension and termination is equally untenable.  While the Supreme Court has "recognized a cause of action under § 1983 based on a single decision attributable to a municipality, [it has] done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights *also proved fault and causation*." *Brown*, 520 U.S. at 405 (emphasis added).  In other words, to prove municipal liability based on a single decision by a policymaker, the plaintiff must present evidence proving that (i) the policymaker did in fact take some action; and (ii) the decision itself was unconstitutional.  *Id.* at 406 ( (holding that municipal liability was established where city council censured and discharged an employee without a hearing, *i.e.*, a due process violation) (citations omitted); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) (holding that municipal liability was established where city council canceled a license permitting a concert after a dispute over the concert's content, *i.e.*, a free speech violation). In this case, the Board's only involvement with Norman's employment was hearing and deciding Norman's grievance(s) concerning his suspension and subsequent termination.  Norman has no evidence that the Board's decision to deny his grievance appeal "*itself* violate[d] federal law."  *See, e.g., Brown*, 520 U.S. at 404 (emphasis in original); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988) ("The city cannot be held liable under § 1983 unless respondent proved the existence of an unconstitutional municipal policy.").  And to the extent Norman argues that the Board ratified Chief Malbrough's allegedly unconstitutional actions, the Supreme Court has expressly held that "[s]imply going along

23

with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *Praprotnik*, 485 U.S. at 130.  Indeed, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where . . . the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale." *Id.*  In those situations, "the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy." *Id.*  Norman simply cannot establish municipal liability against Beaumont ISD based on the events and decisions giving rise to this lawsuit.

In summary, there is no genuine issue of material fact as to the existence of municipal liability against Beaumont ISD under § 1983 because Beaumont ISD is not vicariously liable for the allegedly unconstitutional actions of its employees, and because the Beaumont ISD Board of Trustees did not take any action that itself violated Norman's constitutional rights.  Because municipal liability is an essential element of Norman's § 1983 claims against Beaumont ISD, Norman's constitutional claims must fail.

### G.    Norman cannot raise a genuine issue of material fact that Beaumont ISD denied him due process under the Fourteenth Amendment.

The First Amended Complaint contains one passing reference to the Fourteenth Amendment. [Dkt. No. 9, ¶ 47].  Norman claims that his discharge put his "reputation, honor, or integrity at risk," which gives rise to "a liberty interest under the Fourteenth Amendment." [*Id.*].  To the extent Norman intended to assert a due process claim based on damage to his reputation—*i.e.*, a liberty interest—this claim would be procedural in nature, not substantive.  *See Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 419 (5th Cir. 2018) (emphasis added) (quoting *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989)) ("It is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a *procedural* opportunity to clear one's name."); *see also In re Selcraig*, 705

F.2d 789, 796-97 (5th Cir. 1983) (employee could not claim that act of publishing information about him constituted denial of substantive due process, since "the Fourteenth Amendment provides only procedural protection against injury inflicted by state officers to the interest state employees have in their reputation.").

Norman's allegation that his termination deprived him of a liberty interest does not amount to a procedural due process violation because '[n]either damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process." *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006). "Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Bledsoe*, 449 F.3d at 653 (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)). As explained in *Bledsoe*:

> The Fifth Circuit applies a seven-element 'stigma-plus-infringement' test to determine whether § 1983 affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear his name. The plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Id.* at 653.

Norman cannot satisfy this burden. First, Norman has no evidence that the District made any false charges against him in connection with his termination. Pursuant to Policy 2.5, Norman was subject to termination when he "bec[ame] a candidate for suspension a second time within one year after [his] first suspension." [Ex. 2 at BISD 0043]. Chief Malbrough suspended Norman for confirmed policy violations, including insubordination, on December 12, 2022. [*See* Ex. 13 at BISD 0077]. Less than one month later, Chief Malbrough determined that Norman committed additional policy violations, again including insubordination, which subjected Norman to a second possible

suspension. [*See* Ex. 15 at BISD 0089]. Norman has no evidence that he was ineligible for termination when Chief Malbrough made the decision to terminate his employment. Furthermore, with respect to the findings themselves, the underlying facts are not in dispute. After all, Norman did not deny that he made the Facebook post giving rise to his first suspension or that he refused to respond to the situation at the basketball game in December. [*See* Exs. 5, 12, 23]. Norman also admitted that he had a heated exchange with his supervisor because of his failure to respond to the student situation. [*See* Ex. 23]. Accordingly, Chief Malbrough's conclusions that Lt. Haynes's and Cpl. Boseman's respective complaints against Norman were substantiated were each supported by evidence and cannot form the basis of a stigma-plus-infringement claim involving "false" stigmatizing charges.

Second, Norman was not deprived of a name-hearing clearing after his suspension and/or termination. To the contrary, Norman filed formal grievances appealing these actions and was afforded a hearing before the Beaumont ISD Board of Trustees on his grievances. [*See* Level One Grievance Submission re: Suspension, attached as **Exhibit 27**; Level One Grievance Submission re: Termination, attached as **Exhibit 28**; Notice of Level Three Hearing, attached as **Exhibit 24**]. After reviewing the evidence and receiving arguments from Norman and his legal counsel, the Board upheld the termination. [*See* Ex. 25]. This is all that was required of Beaumont ISD. *See Bledsoe*, 449 F.3d at 653.

Because Beaumont ISD fulfilled its procedural obligations to Norman with respect to any reputational damage he allegedly suffered as a result of his termination, the District is entitled to summary judgment on Norman's Fourteenth Amendment claim.

## H.    The Individual Defendants are immune from Norman's constitutional claims.

To prevail on a claim for a constitutional violation by a government official under 42 U.S.C. § 1983, a plaintiff must establish that (i) the official acted under color of state law; and (ii) while acting under color of state law, the official deprived the plaintiff of a federal constitutional right. *See West v.*

*Atkins*, 487 U.S. 42, 48 (1988).  However, the Supreme Court has long held that public servants are immune from suit unless their conduct violated "clearly established" federal law.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Although qualified immunity is an affirmative defense, once raised, the plaintiff has the burden of demonstrating the inapplicability of the defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  To satisfy this burden, the plaintiff must respond with factual specificity and "fairly engage" the immunity defense.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

The availability of immunity is a question of law. *Siegert v. Gilley*, 500 U.S. 226, 231–32 (1991). Courts must determine (i) whether the plaintiff has described a violation of a constitutional right; and (ii) whether the right was "clearly established" at the time of the official's conduct.  *Pearson v. Callahan*, 555 U.S. 223, 223–24 (2009).  Courts may decide which of the two prongs should be decided first. *Id.* at 225. The plaintiff bears the burden of showing that the official violated clearly established law. *Kovacic v. Villareal*, 628 F.3d 209, 212 (5th Cir. 2010). The plaintiff must identify the violation of a "particularized" right.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  And, the plaintiff must show that the "contours" of the right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Alexander v. Eeds*, 392 F.3d 138, 146 (5th Cir. 2004).  This means that "existing precedent" must have placed the constitutional question "beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

Ultimately, for an official to lose qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances."  *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (citations omitted); *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 525 (5th Cir. 1998).  Accordingly, the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly

violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). "This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citations omitted).

### 1. Norman has no evidence that Dr. Allen or Chief Malbrough violated his constitutional rights.

Norman cannot overcome Superintendent Allen's and Chief Malbrough's entitlement to qualified immunity because he cannot prove any specific acts that either of them allegedly carried out—or failed to carry out—in violation of his constitutional rights. Where multiple defendants are alleged to have committed constitutional violations, a plaintiff must prove what *each* defendant did to commit those violations, and the court should analyze *each* claim of qualified immunity separately. *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994); *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 731 (5th Cir. 2018) ("In cases where the defendants have not acted in unison, qualified immunity claims should be addressed separately for each individual defendant.") (citations and quotations omitted); *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (to state a personal-capacity claim under Section 1983, a plaintiff must allege that the individual defendant was personally involved in the constitutional deprivation, or that their wrongful actions were causally connected to such a deprivation). Norman's inability to prove specific facts demonstrating that Superintendent Allen and Chief Malbrough each engaged in conduct that deprived him of his constitutional rights is fatal to his § 1983 claims against the Individual Defendants, and the Individual Defendants are entitled to summary judgment.

### 2. Norman has not alleged an actionable deprivation of his constitutional rights.

Even if Norman had evidence to support his seemingly random decision to sue Superintendent Allen and Chief Malbrough, he has no evidence suggesting that his constitutional rights were actually violated. As detailed above, Norman cannot prove that his Facebook post constituted protected speech, and his First Amendment claim therefore fails as a matter of law.

Similarly, Norman's purported Fourteenth Amendment claim against the Individual Defendants fails because he cannot prove the essential elements of the stigma-plus-infringement test.

The Individual Defendants are entitled to summary judgment on Norman's constitutional claims.

**I.      Norman cannot recover punitive damages against Beaumont ISD.**

As a matter of law, punitive damages are not available against municipalities and other local governments under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247 (1981); *Mosley v. Houston Comm. College Sys.*, 951 F. Supp. 1279, 1290 (S.D. Tex. 1996). Punitive damages are likewise not available against governmental defendants under Chapter 21 of the Texas Labo Code. TEX. LABOR CODE § 21.2585(b). Accordingly, Beaumont ISD is entitled to summary judgment on Norman's claim for punitive damages.

## VI.
### CONCLUSION

The evidence in this case confirms what Norman's First Amended Complaint foreshadowed: Norman is a disgruntled employee looking to settle the score with his former employer by recasting its legitimate management decisions as discriminatory, retaliatory, and unconstitutional. Despite having the benefit of the entire discovery period available to him, Norman has no evidence to support his conclusory and speculative allegations against the Defendants. Accordingly, Defendants respectfully request that the Court enter final summary judgment in favor of the Defendants on each claim and purported claim against the District and the Individual Defendants. Defendants also request all such other and further relief, both at law and in equity, to which they may be entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:   /s/ Stephanie A. Hamm
        Stephanie A. Hamm, Attorney in Charge
        State Bar No. 24069841
        shamm@thompsonhorton.com
        Alexa Gould
        State Bar No. 24109940
        agould@thompsonhorton.com
        Morgan Beam
        State Bar No. 24101447
        mbeam@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-9611

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

On January 23, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Eastern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Stephanie A. Hamm
Stephanie A. Hamm