IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| SHANTER NORMAN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | CIVIL ACTION NO. 1:24-CV-00007 |
| DISTRICT, BEAUMONT | § | JUDGE MICHAEL J. TRUNCALE |
| INDEPENDENT SCHOOL DISTRICT | § | |
| POLICE DEPARTMENT, | § | |
| SUPERINTENDENT DR. SHANNON | § | |
| ALLEN, AND CHIEF JOSEPH | § | |
| MALBROUGH, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER ISSUING SANCTIONS

The issue pending before the Court is whether Plaintiff's counsel, Brandon Monk, should be sanctioned for using generative artificial intelligence ("AI") in responsive briefings that generated nonexistent quotations and a nonexistent case.

### I.    BACKGROUND

Plaintiff Shanter Norman asserts several claims against Beaumont Independent School District ("BISD"), Beaumont Independent School District Police Department ("BISDPD"), Superintendent Dr. Shannon Allen, and Chief Joseph Malbrough for religious discrimination, retaliation, and violations of his First and Fourteenth Amendment rights. [Dkt. 9]. Norman was employed as an officer for BISD, and he alleges that Defendants engaged in unlawful employment practices after he made a Facebook post praying for integrity and accountability for those in positions of power. *Id.* at ¶¶ 3, 6.

Defendants filed motions to dismiss Norman's live First Amended Complaint for failure to state a claim. [Dkts. 10, 18]. BISD and BISDPD (collectively "the BISD Defendants") filed one motion [Dkt. 10], and Allen and Malbrough (collectively "the Individual Defendants") filed another [Dkt. 18]. In their motion, filed on August 15, 2024, the Individual Defendants argue in part that the Court should

dismiss Norman's official-capacity claims against them as they are duplicative of his claims against BISD. *Id.* at 5–6. On September 24, 2024, Norman's counsel, Brandon Monk filed a response and defended the official-capacity claims. [Dkt. 24 at 1–4]. On October 1, 2024, the Individual Defendants filed their reply [Dkt. 25], noting that Mr. Monk referenced five quotes that do not exist within the cases cited.[1] Furthermore, Mr. Monk cited a case that does not exist.[2] Thereafter, on October 8, 2024, Mr. Monk filed a sur-reply [Dkt. 26] that failed to address the issues raised by the Individual Defendants and in fact re-cited[3] one of the nonexistent quotes.

In November 2024, Judge Marcia A. Crone issued an order to show cause, held a hearing, and sanctioned Mr. Monk for similar issues. *See Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-cv-281, 2024 WL 4882651 (E.D. Tex. Nov. 25, 2024) (Crone, J.). Noting the similarities between Judge Crone's case and the present case, on March 3, 2025, the Court issued an Order to Show Cause directing Mr. Monk to provide copies of the six cases and to explain why the Court should not impose sanctions for failure to comply with Federal Rule of Civil Procedure 11(b)(2) and Eastern District of Texas Local Rules AT-3(b) and (m). [Dkt. 33]. The Court held a hearing. [Dkt. 38]. In his response to the Show Cause Order and at the hearing, Mr. Monk admits that the exact quotes do not exist, but that the principles misquoted are consistent with the holdings of the cases. *See* [Dkt. 35].[4] With regards to

---

[1] Mr. Monk's response brief cites nonexistent quotes from the following cases: *Kentucky v. Graham*, 473 U.S. 159 (1985); *Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009); *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254 (8th Cir. 2010); *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003); *Wilson v. Northcutt*, 441 F.3d 586 (8th Cir. 2006).

[2] The nonexistent case is "*Doe v. Sch. Dist. of City of Norfolk*, 340 F. Supp. 3d 887, 895 (D. Neb. 2018)."

[3] Mr. Monk re-cited the nonexistent quote from *Wilson v. Northcutt*, 441 F.3d 586 (8th Cir. 2006). *See* [Dkt. 26 at 2].

[4] Mr. Monk filed a supplemental response to the Order to Show Cause by attaching an affidavit and exhibits showing an email chain with opposing counsel in a different case. [Dkt. 37]. There, he emailed defense counsel the day before the hearing with this Court stating that he could not find a case that opposing counsel cited, which was due to an unintentional error with the case citations. [Dkts. 37-1, 37-2]. Presumably, he filed this affidavit to make a point that emailing opposing counsel is more efficient at resolving issues than bringing them to court. [Dkt. 37-3 (Mr. Monk: "I thought the fastest way to resolve was email."). The Court is not fooled by this attempt to prove virtue. Opposing counsel there made a typographical error—they did not make up quotations or case citations as Mr. Monk did here.

the nonexistent case, Mr. Monk acknowledged that the citation contained an error and that he should have instead cited *Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605 (8th Cir. 2003). *Id.* at 8.

The Court notes that Mr. Monk filed his responsive briefings in the present case *before* Judge Crone issued sanctions in her case. Mr. Monk indicated that he has completed two courses on ethical lawyering and the use of AI in response to Judge Crone's sanctions. *See* [Dkts. 35-1, 35-2]. He also highlighted that his process for legal writing is different than what it was when he submitted the briefings and that he has learned from his courses. [Dkt. 35 at 9–11]. However, during the hearing, Mr. Monk misrepresented to the Court that Defendants failed to raise the issues with his cases in their reply brief. When asked why he did not respond to the Defendants' concerns about the quotation, he stated that they did not point out those issues and were instead arguing the difference in legal principles. In response, Ms. Stephanie Hamm, counsel for Defendants, stated that she and her team explicitly pointed out the exact quotes misrepresented. This is true. In their reply, Defendants spend the first three pages of their ten-page brief highlighting the nonexistent quotes and the inconsistencies between the quotes and relevant legal principles. [Dkt. 25 at 1–3].

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 11(b), by signing and filing a pleading, motion, or "other paper," with the Court, an attorney "certifies that to the best of [his] knowledge, information, and belief" the "legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b)(2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney . . . that violated the rule or is responsible for the violation." *Id.* 11(c)(1). "In determining whether an attorney has complied with Rule 11, the standard under which he is judged is 'an objective, not subjective, standard of reasonableness.'" *Gauthier*, 2024 WL 4882651, at *2 (first quoting *Snow Ingredients, Inc. v. Snowizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016); and then collecting cases). "At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities

on which they rely." *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024); *see also Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.* 498 U.S. 533, 542 (1991) ("A signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive.").

Additionally, the Eastern District's Local Rules caution attorneys about their use of generative AI:

> If the lawyer, in the exercise of his or her professional legal judgment, believes that the client is best served by the use of technology (e.g., ChatGPT, Google Bard, Bing AI Chat, or generative artificial intelligence services), then the lawyer is cautioned that *certain technologies may produce factually or legally inaccurate content and should never replace the lawyer's most important asset – the exercise of independent legal judgment.* If a lawyer chooses to employ technology in representing a client, the lawyer continues to be bound by the requirements of Federal Rule of Civil Procedure 11, Local Rule AT-3, and all other applicable standards of practice and *must review and verify any computer-generated content to ensure that it complies with all such standards.*

E.D. Tex. R. AT-3(m) (emphasis added). As one district court articulated, "the use of artificial intelligence must be accompanied by the application of actual intelligence in its execution." *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 574234, at *4 (S.D. Ind. Feb. 21, 2025) (report and recommendation).

Furthermore, Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct is titled, "Candor Toward the Tribunal." Tex. Disciplinary Rules Pro. Conduct. R. 3.03. In relevant part, Rule 3.03 provides: "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal . . . ." *Id.* at 3.03(a)(1). The Eastern District of Texas has incorporated the Texas Disciplinary Rules of Professional Conduct in the Local Rules. *See* E.D. Tex. R. AT-2(a) ("The standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court. . . . Therefore, the attorney practicing in this court should be familiar with the duties and obligations imposed upon members of this bar by the Texas Disciplinary Rules of Professional Conduct, court

decisions, statutes, and the usages customs and practices of this bar."). For example, Local Rule AT-3(b) states: "A lawyer owes candor, diligence, and utmost respect to the judiciary." *Id.* AT-3(b).

"Many harms flow from the submission of fake opinions." *Gauthier*, 2024 WL 4882651, at *3 (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023)). These include time wasted by the opposing party and the Court; harm to a client's legal interests; injury to the reputation of judges; and damage to the public's perception of the judicial system and the legal profession. *Mata*, 678 F. Supp. 3d at 448–49. Here, a school district spent money it could have directed toward the education of children to paying its attorneys' legal fees in preparation of a response to misleading briefing and for attending a hearing to address the use of AI in legal writing. Furthermore, such misleading briefing, if relied upon by the Court, could lead to an error in the Court's order or judgment. An error of this nature could lead to a costly appeal and a drain on the Court's resources.

The Court finds that Mr. Monk failed to verify the existence of the quotations and citations made in his responsive briefings in violation of Federal Rule of Civil Procedure 11(b)(2) and Local Rules AT-3(b) and (m).  Even when Ms. Hamm highlighted the issues with the six cases Mr.  Monk cited, [Dkt. 25 at 1–3], he failed to take corrective action after already being sanctioned by Judge Crone for his use of artificial intelligence.[5] In fact, he even cited one of the nonexistent quotes again in his sur-reply. [Dkt. 26 at 2]. In addition, the Court finds that Mr. Monk breached his obligation of candor to the Court when he made a false statement of material fact, in violation of Rule 3.03, when he misrepresented to the Court that Defendants did not highlight the issues with his misrepresented quotes in their reply brief.

Before concluding, the Court wishes to note the distinction between good faith lawyering and lazy lawyering. Good faith lawyering may involve a difference of interpretation between the parties while bad-faith lawyering entails making something up and thereby misleading the Court. Zealous

---

[5] Judge Crone noted in her opinion that "Monk stated that he has used [AI] in other cases and is in the process of verifying other submissions he had made to the court." *Gauthier*, 2024 WL 4882651, at *1 n.3.

advocacy requires attorneys to distinguish and compare cases in support of their clients' legal interests. It does not include, however, making up quotations and cases in support of a "principle" and misrepresenting the record.

### III.    CONCLUSION

It is therefore **ORDERED** that as a sanction for his conduct discussed herein, Brandon Monk must pay a **$2,000.00** penalty to the Clerk's Office **within fourteen (14) days of this Order**.

It is further **ORDERED** that Brandon Monk attend a continuing legal education course, for a minimum of one-hour Texas MCLE credit, on the topic of candor to the court, opposing counsel, and/or a similar matter.

It is further **ORDERED** that Brandon Monk provide a copy of this Order to Plaintiff and to file certification on the docket in this case attesting that he has done so **within fourteen (14) days of this Order**.

**SIGNED this 17th day of March, 2025.**


*Michael J. Truncale*
Michael J. Truncale
United States District Judge