IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| SHANTER NORMAN, | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | CIVIL ACTION NO. 1:24-CV-00007 |
| DISTRICT, BEAUMONT | § | JUDGE MICHAEL J. TRUNCALE |
| INDEPENDENT SCHOOL DISTRICT | § | |
| POLICE DEPARTMENT, | § | |
| SUPERINTENDENT DR. SHANNON | § | |
| ALLEN, AND CHIEF JOSEPH | § | |
| MALBROUGH, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Before the Court is Defendants Beaumont Independent School District ("BISD") and Beaumont Independent School District Police Department ("BISDPD")'s Motion to Dismiss Plaintiff's Amended Complaint. [Dkt. 10]. Also before the Court is Defendants Dr. Shannon Allen and Chief Joseph Malbrough (collectively the "Individual Defendants")'s Motion to Dismiss Plaintiff's Amended Complaint. [Dkt. 18]. For the following reasons, the Court **GRANTS** both motions.

## I.    BACKGROUND

This lawsuit arises out of allegations of employment discrimination based on an employee's religious beliefs. [Dkt. 9]. Plaintiff Shanter Norman worked for BISDPD as an officer and was supervised by the Individual Defendants, Dr. Allen and Chief Malbrough. *Id.* at ¶ 3. He alleges that the Individual Defendants were policymakers for the BISDPD and delegated significant authority over personnel and the department to Lieutenant P. Haynes. *Id.* Norman claims that he was subjected to a hostile work environment and retaliation leading to discharge

after he made a Facebook post praying for integrity and accountability for those in power. *Id.* at

¶¶ 4, 6. In particular, the post stated:

> My prayer:
> If I'm ever placed in a supervisor position or over an agency, I pray that I will listen
> to the ones under my command. I pray I will not be to [sic] position driven and
> power struck not to have integrity and accountability. I have served my country and
> community for years. It's been an honor and privilege. I've had the opportunity to
> learn a lot and see how not to run an agency and how not to supervise. To be
> continued.

[Dkts. 10-1; 18-1].[1]

In addition to being suspended for ten days following his Facebook post, [Dkt. 9 at ¶ 20],

Norman alleges that the hostile work environment and retaliation culminated in his being

discharged on January 5, 2023, by and through Lieutenant Haynes. *Id.* at ¶¶ 4, 15. More

specifically, he alleges that Lieutenant Haynes "constructed false allegations that Plaintiff had been

'disrespectful' about his past and present supervisors and contrived reports of anonymous

complaints regarding [him]." *Id.* at ¶ 6. He states that this "intentional abuse of power" subjected

him to experiencing disparate discipline, including wrongful termination; fabricating false,

unfounded accusations that he failed to adhere to BISD policies; and retaliating against him for

filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.*; *id.* at

¶¶ 17–18. He further alleges that the harassment and hostile work environment were motivated by

his protected speech in the Facebook post. *Id.* at ¶ 18. On or about November 9, 2022, Norman

claims that he was "subjected to harassment, bullying, and discriminatory acts from Captain E.

Payne and made to surrender his taser." *Id.* at ¶ 20.

Norman also alleges that BISD subjected him to post-employment retaliation for filing and

pursuing a charge of discrimination with the Texas Workforce Commission Civil Rights Division

---

[1] The content of this Facebook prayer was included in an attachment to the Defendants' motions to dismiss. *See id.*
For reasons explained *infra* Section III.A, the Court considers the content of the prayer presented in the attachment
because it was explicitly referenced in the complaint and is central to Norman's claims.

("TWCCRD") by "terminat[ing] witnesses that knew of or witnessed retaliatory actions and had a policy to falsely accuse employees of crimes in order to support a pretextual termination." *Id.* at ¶¶ 21–22.

Based on these allegations, Norman brought allegations of retaliation, religious discrimination, and violations of the First and Fourteenth Amendments. *Id.* at ¶¶ 27–48. Norman originally filed the present suit against BISD and BISDPD in Jefferson County state court on December 1, 2023. [Dkt. 2]. The Defendants timely removed the case on January 7, 2024. [Dkt. 1]. Norman filed his live first amended complaint on May 6, 2024, adding the Individual Defendants as parties. [Dkt. 9]. On May 20, 2024, BISD and BISDPD filed their motion to dismiss, arguing failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Dkt. 10]. On August 15, 2024, the Individual Defendants filed their motion to dismiss. [Dkt. 18]. Norman filed his responses to the motions. [Dkts. 13, 24].[2] The motions are ripe for review.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). While the Court must accept the well-pleaded facts in the complaint as true, it will "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). "The Court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund*

---

[2] The Court notes that BISD's reply brief [Dkt. 14] was five pages too long in violation of Local Rule 7(a)(1). E.D. Tex. Civ. R. 7(a)(1) (stating that reply briefs to dispositive motions "shall not exceed ten pages, excluding attachments"). Accordingly, the Court only considered the first ten pages of the brief.

*V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough well-pleaded facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). A claim is "plausible on its face" when the well-pleaded facts allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

For the following reasons, the Court **GRANTS** the motions in their entirety.

### A. Preliminary Note on Additional Attachments

When a motion to dismiss refers to matters outside the complaint and the district court considers those matters, the court generally must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). But as with most general rules, this one has a couple of exceptions. First, courts may consider matters of which they can take judicial notice. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *see also* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.").[3] Second, courts may

---

[3] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

consider documents attached to a Rule 12(b)(6) motion "that [1] are referred to in the plaintiff's complaint and [2] are central to the plaintiff's claim."[4] *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). This second consideration is relevant to the briefings in this case.

Here, Defendants attach a Facebook post containing Norman's prayer and the EEOC charge to their motions to dismiss. [Dkts. 10-1; 10-2; 18-1; 18-2]. In contrast, Norman attaches a declaration to his response to only BISD and BISDPD's motion to dismiss, which adds entirely new facts that were not specifically alleged in his complaint. *See* [Dkt. 13-1]. The rules for considering attachments at the 12(b)(6) stage provide a helpful guardrail on this point: the Court has "complete discretion" when assessing attachments at the 12(b)(6) stage. *See Berry v. Tex. Woman's Univ.*, 528 F. Supp. 3d 579, 608 (E.D. Tex. 2021) (Schroeder, J.) (citations omitted) (internal quotation marks omitted) ("When a party presents matters outside the pleadings, the Court has complete discretion to either accept or exclude the evidence for purposes of determining the motion."); *see also Chuttoo v. Horton*, 627 F. Supp. 3d 655, 666 (E.D. Tex. 2022) (Jordan, J.) (citing *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988)); *Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014) (Lynn, J.) (citation omitted); *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 963–64 (S.D. Tex. 2016) (citations omitted); *Herrera v. NBS, Inc.*, 759 F. Supp. 2d 858, 863 (W.D. Tex. 2010).

The Court, exercising this discretion, will only consider the attachments to Defendants' motions to dismiss. Norman's complaint expressly references "a Facebook post praying for integrity and accountability for those in positions of power" and that Defendants retaliated against him "for filing a charge against BISD with the EEOC." [Dkt. 9 at ¶ 6]. The Court finds that both

---

[4] The "Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims," but "the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims." *Crucci v. Seterus, Inc.*, No. EP-13-CV-317-KC, 2013 WL 6146040, at *4 (W.D. Tex. Nov. 21, 2013) (citation omitted).

the Facebook post and EEOC charge attachments are referred to in the complaint and are central to Norman's claims, particularly his state-law retaliation and First Amendment retaliation claims. *See Scanlan*, 343 F.3d at 536; *Crucci*, 2013 WL 6146040, at *4.  Accordingly, it will consider the attachments in its analysis. The Court will not, however, consider Norman's declaration because it contains new factual allegations that he failed to plead in his complaint. *See Hicks v. Ashworth*, Civil Action No. H-23-2234, 2024 WL 3243474, at *6 (S.D. Tex. June 26, 2024) ("[N]ew facts alleged in a response to a motion to dismiss are not properly before the court and will not be considered when ruling on the motion to dismiss." (collecting cases)).[5]

### B.  Liability of the Individual Defendants

In their motion, the Individual Defendants argue (1) that they cannot be sued in their official capacity and (2) Norman fails to plausibly state any claim against them. [Dkt. 18].

#### i.  Official Capacity Suits

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978)). Additionally, where a plaintiff makes similar claims against the entity, a court can dismiss the duplicative official capacity claims against the entity's employee. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (citing *Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996)).

---

[5] The Court initially considered including two other Facebook posts that Norman claims in his declaration he made after the initial post. *See* [Dkt. 13-1 at ¶¶ 15–16]. However, it declines to do so for two reasons. First, the complaint references "*a* Facebook post" in the singular, not a series of posts. [Dkt. 9 at ¶ 6 (emphasis added)]. The post referenced by Defendants substantively matches what the complaint alleges, namely that he posted a prayer for integrity and accountability to those in power. *Compare* [Dkt. 9 at ¶ 6], *with* [Dkts. 10-1; 18-1]. Second, the timeline explained in Norman's declaration follows an investigation into his first Facebook post, as Lieutenant Haynes received a complaint on the day Norman posted the first prayer and Norman received a formal complaint the day after the post. [Dkt. 13-1 at ¶¶ 6–7]. Norman's declaration further suggests that no one investigated the continued series of prayers after the first post. *See id.* at ¶ 14 ("No one investigating [sic] the continued prayers after the first prayer."). For these reasons, the Court will not consider the content of the subsequent posts as they were not expressly mentioned in the complaint and they do not appear to be the motivating force of Defendants' alleged actions.

Therefore, "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Graham*, 473 U.S. at 166 (footnote omitted).

Here, Norman sued the Individual Defendants in their individual and official capacities. [Dkt. 9 at ¶ 12 (naming "Dr. Shannon Allen, individually and in her official capacity . . . .")]; *id.* at ¶ 13 (naming "Chief Joseph Malbrough, individually and in his official capacity . . . ."). Because the governmental liability claims against the Individual Defendants in their official capacity are essentially against BISD and, thus, duplicative, the Court **GRANTS** the motion as to any claims against them in their official capacities. *See Castro Romero*, 256 F.3d at 355.

### ii.  State Law Claims

Norman also alleges that the Individual Defendants violated Chapter 21 of the Texas Labor Code. [Dkt. 9 at ¶¶ 27–42]. More specifically, he alleges unlawful retaliation, hostile work environment, and disparate treatment. *Id.*

Under Chapter 21 of the Texas Labor Code, a plaintiff must allege "that the defendant falls within the statutory definition of 'employer.'" *Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 649 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Miles v. Lee Anderson Co.*, 339 S.W.3d 738, 742 (Tex. App.—Houston [1st Dist.] 2011, no pet.)). As relevant here, the statute defines "employer" as "a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed." Tex. Lab. Code § 21.002(8)(D).[6] "It is well established in Texas that an individual cannot be held personally liable under [Chapter 21]." *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 580 (Tex. App. Houston [14th Dist.] 2004, no pet.) (citation omitted); *see also Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 439 (Tex. App. Waco 2000, pet. denied)

---

[6] Other definitions of "employer" are: (1) "a person [or agent of this person] who is engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year;" *id.* § 21.002(8)(A)–(B), and (2) "an individual elected to public office in this state or a political subdivision of this state." *Id.* at § 21.002(C). None of these definitions apply to the case here.

("[S]upervisors and managers are not liable in their individual capacities for alleged acts of discrimination under [Chapter 21]."); *Lopez v. Beard & Lane, P.C.*, Civil Action No. H-23-2895, 2023 WL 6283325, at *4 (S.D. Tex. Sept. 26, 2023) (dismissing an individual defendant in part because the plaintiff failed to allege that the defendant met the statutory definition of employer under Chapter 21).

Here, neither of the Individual Defendants is an "employer" as defined by Chapter 21. Dr. Allen is the superintendent of BISD and Chief Malbrough is the chief of BISDPD. [Dkt. 9 at ¶¶ 2, 12]. They are not "a county, municipality, state agency, or state instrumentality." Tex. Lab. Code § 21.002(8)(D). Norman even concedes that Chapter 21 does not provide for individual liability, but he argues that dismissal of those claims against the Individual Defendants in their official capacity would be premature. [Dkt. 24 at 13]. This argument is flawed and cites nonexistent quotations and case law. As explained above, the Individual Defendants cannot be sued in their official capacities without making the suit duplicative. *See supra* Section III.B.i.

Accordingly, the Court **GRANTS** the motion as to the state law claims against the Individual Defendants.

### iii. Federal Claims and § 1983

As for his federal law claims, Norman seeks relief against the Individual Defendants for alleged violations of his First and Fourteenth Amendment rights. [Dkt. 9 at ¶¶ 43–48]. "Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)); *see* 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Olabisiomotosho*, 185 F.3d at 525 (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). "To state a § 1983 claim, a plaintiff must (1) allege a violation

of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citing *Lefall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)). "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999)).

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). Once an official pleads the defense of qualified immunity, "the burden shifts to the plaintiff to rebut it." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (emphasis omitted) (quoting *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003)). The qualified immunity defense has two prongs: (1) "whether an official's conduct violated a statutory or constitutional right of the plaintiff," and (2) "whether the right was clearly established at the time of the violation." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). The Court may rest its analysis on either prong. *Id.* (citing *Morgan*, 659 F.3d at 385).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks omitted). Generally, to prove that a right is "clearly established," "[a] plaintiff must identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution." *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (internal quotation marks omitted). "While a plaintiff need not find a case 'directly on point, . . . existing precedent must have placed the statutory or

constitutional question beyond debate.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12). And the clearly established law, must be "particularized" to the facts of the case before the Court—it should not be defined "at a high level of generality." *Id.* at 335 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 577 U.S. at 12 (internal quotation marks omitted).

A Rule 12(b)(6) motion to dismiss based on qualified immunity is evaluated under the same pleading standards as a traditional Rule 12(b)(6) motion to dismiss. *See Terwilliger v. Reyna*, 4 F.4th 270, 279–80 (5th Cir. 2021). "The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983[,] and would overcome their qualified immunity defense." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (alteration in original) (quoting *Terwilliger*, 4 F.4th at 279–80).

Because the first elements of a § 1983 claim and qualified immunity defense entail an officer's violation of a constitutional or federal right, the Court begins—and ends—its analysis for Plaintiffs' federal violations claims here.

### a.  First Amendment Retaliation Claim

The Individual Defendants primarily argue that Norman failed to allege that his Facebook post constituted protected free speech. [Dkt. 18 at 9–12].

The First Amendment to the Constitution states: "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I.  In the case of a public employee, the First Amendment's protections are triggered whenever a government employer takes adverse action against the employee for engaging in protected speech. *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (rejecting the idea that public employees forfeit their right to free speech by virtue of their public employment). To establish a prima facie case of First Amendment retaliation, a public employee must allege:

"(1) he suffered an adverse employment action, (2) he spoke as a citizen on a matter of public concern,[7] (3) his interest in the speech outweighs the government's interest in the efficient provision of public services, and (4) the speech precipitated the adverse employment action." *Nixon v. City of Hous.*, 511 F.3d 494, 497 (5th Cir. 2007) (internal quotations and citations omitted). Because the Court finds that Norman did not plausibly allege that his speech was protected under the First Amendment, it finds that his First Amendment retaliation claim fails.

The first step in determining whether Norman spoke as a citizen on a matter of public concern is to assess whether he engaged in First Amendment speech as a citizen or as a public employee. *See Dorris v. City of McKinney*, 214 F. Supp. 3d 552, 558 (E.D. Tex. 2016). "[W]hen public employees make statements pursuant to their official duties, [they] are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). In determining whether a public employee is speaking pursuant to his official duties, the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). Here, the Individual Defendants do not argue that Norman wrote the Facebook post as a public employee. *See generally* [Dkt. 18]. Therefore, the Court deems Norman to have spoken as a private citizen.

The second step in this determination is whether Norman speech involved a matter of public concern. *Dorris*, 214 F. Supp. 3d at 558. "Speech involves a matter of public concern if it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Graziosi v. City of Greenville*, 775 F.3d 731, 738 (5th Cir. 2015) (quoting *Connick*

---

[7] Some cases divide this element into two separate elements. *See, e.g., Hardesty v. Cochran*, 621 F. App'x 771, 775–76 (5th Cir. 2015) ("Thus, to establish a prima facie case for First Amendment retaliation, a public employee must show that: . . . (2) He spoke as a citizen, rather than pursuant to his official job duties; (3) He spoke on a matter of public concern . . . .").

*v. Myers*, 461 U.S. 138, 146 (1983)); *see also Lane*, 573 U.S. at 241 (same). The content, form, and context of a given statement drive this inquiry. *Graziosi*, 775 F.3d at 738; *see also Connick*, 461 U.S. at 147–48 (same). When a plaintiff's speech contains a mix of private and public concerns, courts balance all three factors, with context and form weighed more heavily than content. *Gibson v. Kilpatrick*, 838 F.3d 476, 487 (5th Cir. 2016) (citation and quotations omitted).

The content of speech which "expos[es] or otherwise address[es] malfeasance, corruption or breach of the public trust, especially within a police department, touches upon matters of public concern." *Graziosi*, 775 F.3d at 738 (first citing *Branton v. City of Dall.*, 272 F.3d 730, 740 (5th Cir. 2001); and then citing *Brawner v. City of Richardson*, 855 F.2d 187, 191–92 (5th Cir. 1988)) (finding that the plaintiff's Facebook posts—while initially about a matter of public concern— were ultimately akin to an internal grievance not of public concern because they "quickly devolved into a rant attacking [the police chief's] leadership and culminating with the demand that he 'get the hell out of the way.'"); *see also Lane*, 573 U.S. at 241 (finding that the content of the plaintiff's testimony regarding corruption in a public program and misuse of state funds was a matter of "significant public concern"). The content of speech, however, is not of public concern when it "convey[s] no information at all other than the fact that a single employee is upset with the status quo." *Connick*, 461 U.S. at 148. In terms of the form, speech made in a public medium weighs in favor of a finding that a plaintiff spoke on a matter of public concern. *See, e.g.*, *Graziosi*, 775 F.3d at 739 (finding that the plaintiff's post on a public official's Facebook page weighed in favor of finding that she spoke on a matter of public concern); *Gaines v. Jefferson Cnty. Sch. Dist.*, 705 F. Supp. 3d 664, 674 (S.D. Miss. 2023) (finding a Facebook post made to the public and available to anyone with internet weighed in favor of a finding of public concern). *But see Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362–63 (5th Cir. 1986) (concluding that speech in a personal notebook was private and not speech on a matter of public concern when the author made no effort

12

to communicate its contents). Finally, in terms of context, "speech is not on a matter of public concern if it is made solely 'in furtherance of a personal employer-employee dispute.'" *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005) (quoting *Kennedy v. Tangipahoa Par. Libr. Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000)); *see also Gibson*, 838 F.3d at 487 (concluding that the plaintiff's lawsuit was filed in the context of a years-long employment feud between the parties). If the speech was made "against a backdrop of widespread debate in the community," however, it could be a matter of public concern. *Markos v. City of Atlanta,* 364 F.3d 567, 572 (5th Cir. 2004) (citation omitted); *see also Wetherbe v. Tex. Tech. Univ. Sys.*, 699 F. App'x 297, 301 (5th Cir. 2017) (per curiam) (same).

Here, the Individual Defendants argue that Norman's speech is akin to the employer-employe dispute because his Facebook post did not address anything relating to public concern. [Dkt. 18 at 12]. In contrast, Norman argues that his speech addresses the qualities desirable in public leaders, namely accountability and integrity in public service. [Dkt. 24 at 5]. While the post may have initially discussed qualities desirable in a supervisor, the Court agrees with Defendants and finds that the content of Norman's Facebook post did not constitute protected speech on a matter of public concern. Again, Norman posted the following on Facebook:

> My prayer:
> If I'm ever placed in a supervisor position or over an agency, I pray that I will listen to the ones under my command. I pray I will not be to [sic] position driven and power struck not to have integrity and accountability. I have served my country and community for years. It's been an honor and privilege. I've had the opportunity to learn a lot and see how not to run an agency and how not to supervise. To be continued.

[Dkts. 10-1; 18-1]. First, as related to content, like *Graziosi* and *Connick*, Norman's speech merely conveys an opinion and information that he is unhappy with his supervisor or agency. Like the Facebook post in *Graziosi*, Norman's post conveys no information exposing or addressing corruption, malfeasance, or breach of public trust that would be of public concern. *Graziosi*, 775

F.3d at 738. In fact, Norman speaks on behalf of only himself, and the content of his message relates solely to employees who are under the "command" of an agency or supervisor. Nothing in his post relates to how the agency or supervisor treats the public or how their actions affect the community at large. It therefore appears that his message "convey[s] no information at all other than the fact that a single employee is upset with the status quo." *Connick*, 461 U.S. at 148. Second, the form of Norman's speech weighs in favor of a finding of public concern because Norman posted it on Facebook, a public forum accessible to other Facebook users. *See Graziosi*, 775 F.3d at 739; *Gaines*, 705 F. Supp. 3d at 674.[8] Finally, the context weighs against a finding of public concern because it was made in the context of an employer-employee dispute, not with the backdrop of widespread community debate. *Compare Salge*, 411 F.3d, *and Gibson*, 838 F.3d at 487, *with Markos*, 364 F.3d at 572 (5th Cir. 2004), *and Wetherbe*, 699 F. App'x at 301. Norman does not allege that BISD and BISDPD were the subject of community controversy such that his post would publicly shed light on internal issues. In weighing these factors, the Court finds that Norman's speech was not of public concern, and therefore not protected speech under the Fist Amendment. Furthermore, because Norman fails to plausibly allege that his speech was protected, the Court finds that he failed to allege a First Amendment violation.

### b. Fourteenth Amendment Procedural Due Process Claim

The Individual Defendants argue that Norman failed to allege a violation of the Fourteenth Amendment because his passing reference in his complaint that his discharge put his "reputation, honor, or integrity at risk" is insufficient to state a valid due process claim. [Dkt. 18 at 12].

---

[8] Although Norman does not indicate whether his Facebook account is private (e.g., accessible only to his followers) or public (e.g., accessible to anyone), the act of posting something on a forum accessible to several members of his community is sufficient in the Court's view for a finding of public form for purposes of its analysis. Based on the screenshot of the post, fifty-one people reacted, twenty-nine people commented, and one person shared it, demonstrating that his post was publicly disseminated. [Dkts. 10-1; 18-1]. Several people could have still read and viewed his post without interacting with it.

"[D]ischarge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." *Rosenstein v. City of Dall.*, 876 F.2d 392, 395 (5th Cir. 1989) (collecting cases); *see also Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 419 (5th Cir. 2018) (same). A public employee may pursue damages under § 1983 for the deprivation of a liberty interest if his employer discharges him "under circumstances that will do harm to the employee's reputation without giving the employee the opportunity to clear his name." *Youngblood v. City of Galveston*, 920 F. Supp. 103, 106 (S.D. Tex. 1996) (citing *Rosenstein*, 876 F.2d at 395). "Neither damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process." *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (footnotes omitted) (citations omitted). The Fifth Circuit uses the "stigma-plus-infringement" test to determine whether a government employee plausibly alleges a deprivation of liberty interest. *Id.* Under this test, the plaintiff must allege:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Id.* (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)).

Here, the only reference to the Fourteenth Amendment is the allegation under the heading "First Amendment and Association Claims" stating that "[d]ischarge from public employment under circumstances that put the employee's reputation, honor, or integrity at stake give [sic] rise to a liberty interest under the Fourteenth Amendment." [Dkt. 9 at ¶ 47]. The Individual Defendants argue that the Court should dismiss Norman's Fourteenth Amendment claim because his complaint "is devoid of facts" alleging that he requested a name-clearing hearing, that Defendants denied him a hearing, or that Defendants published any false accusations. [Dkt. 18 at 13]. In response,

Norman concedes that his reference to the Fourteenth Amendment alone "might be conclusory" and that he "does not explicitly allege that he requested a name-clearing hearing or that such a request was denied." [Dkt. 24 at 7–8]. Despite this, he insists that a request for a name-clearing hearing and the denial of that request "are not universally required at the pleading stage." *Id.* at 8. In support of this contention, he misrepresents *Rosenstein*, which clearly states that the plaintiff must prove those two elements and concludes that the plaintiff properly requested a name-clearing hearing. 876 F.2d at 395–96 (finding that the plaintiff's "request to participate in established grievance, appeals, or other review procedures to contest defamatory charges was sufficient to state a request for a name-clearing hearing." (citation omitted)).[9]

Because Norman fails to state that he requested a name-clearing hearing or that Defendants denied such a hearing, the Court finds that he failed to plausibly allege a Fourteenth Amendment violation. *See Youngblood*, 920 F. Supp. at 106 (dismissing the case after concluding that the plaintiff's claim "fatally defective" because he failed to allege that he requested a name-clearing hearing or that any request was denied).

For these reasons, the Court finds that Norman failed to allege a violation of a constitutional right against the Individual Defendants and sufficient to overcome qualified immunity. Accordingly, the Court **GRANTS** the motion to dismiss as to all federal claims against the Individual Defendants. Moreover, because Norman failed to plausibly allege any claims against the Individual Defendants, the Court **DISMISSES** them as Parties to the suit.

---

[9] What is more, *Rosenstein* was not decided at the motion to dismiss stage of litigation; rather, it was an appeal challenging a judgment on the verdict. *Id.* at 394–95. Norman's argument that a name-clearing hearing and the denial of that request "are not universally required at the pleading stage" is misleading and false.

### C.  Liability of BISD and BISDPD

Next, the Court turns to Norman's claims against BISD and BISDPD. First, BISDPD argues that it cannot be sued because it is not a separate legal entity capable of being sued. [Dkt. 10 at 5]. Next, BISD argues that Norman fails to plausibly allege any claims against it. *Id.* at 5–17.[10]

### i.  Claims Against BISDPD

Under Federal Rule of Civil Procedure 17, a party must have the capacity to sue or be sued. Fed. R. Civ. P. 17(b). As relevant here, the capacity of an entity to be sued is determined "by the law of the state where the court is located." *Id.* 17(b)(3). "Under Texas law, the touchstone is whether the entity has been granted the capacity to sue and to be sued." *Dillon v. Jefferson Cnty. Sheriff's Dep't*, 973 F. Supp. 626, 627 (E.D. Tex. 1997) (quotations omitted) (citations omitted); *see also Doe v. Edgewood Indep. Sch. Dist.*, No. 5:16-cv-01233, 2017 WL 11825006, at *2 (W.D. Tex. May 24, 2017) ("In order for Plaintiff to sue a city department, that department must have a separate legal existence."). "[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (collecting cases). When a plaintiff fails to allege that a school district granted its police department the capacity to sue or be sued, such claims against the police department should be dismissed. *See Edgewood*, 2017 WL 11825006, at *2; *see also Hutchinson v. Box*, 4:10-cv-240, 2010 WL 5830499, at *1 (E.D. Tex. Aug. 20, 2010), *report and recommendation adopted* 2011 WL 839864 (E.D. Tex. Feb. 17, 2011) ("[I]f a plaintiff fails to allege or demonstrate that such defendant is a separate legal entity having jural authority, then claims against that entity should be dismissed as frivolous and for failing to state a claim." (quotation and citation omitted)).

---

[10] BISD also argues that Norman cannot recover punitive damages against municipalities and other local governments under § 1983. *Id.* at 17. In his response, Norman concedes that punitive damages are not recoverable against BISD. [Dkt. 13 at 17]. Therefore, the Court does not address this argument.

Here, Norman does not allege that BISD granted BISDPD the capacity to be sued. *See generally* [Dkt. 9]. In his response, Norman references BISD's website stating, "The [BISDPD] is a fully authorized agency by the State of Texas and Established by the [BISD] School Board of Trustees in April of 2007." [Dkt. 13 at 13]. Norman also argues that he brought an administrative action against BISDPD and that it did not challenge standing at that time. *Id.* at 13–14. However, the fact that BISDPD is an agency established by BISD and that Norman took *administrative* action against it does not mean that BISD took "explicit steps to grant [it] with jural authority" to have the capacity to be sued in federal court. *Darby*, 939 F.2d at 313. In fact, his complaint itself acknowledges that BISDPD is "merely a Department within BISD." [Dkt. 9 at ¶ 2].

For these reasons, the Court finds that Norman failed to allege that BISDPD is a separate jural authority capable of being sued. Accordingly, the Court **GRANTS** the motion as to BISDPD and **DISMISSES** it as a party.

### ii.  Claims Against BISD

Next, the Court addresses Norman's remaining allegations against BISD.

### a.  State Law Claims

Norman alleges several state-law claims under Chapter 21 of the Texas Labor Code, namely retaliation and religious discrimination in the form of disparate treatment and a hostile work environment. *Id.* at ¶¶ 27–42. As a preliminary note, the Texas Legislature modeled Chapter 21 after Title VII of the Civil Rights Act of 1964. *See* Tex. Lab. Code § 21.001(1) (stating that a purpose of Chapter 21 is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments"). Therefore, courts "look to relevant federal law for guidance when the relevant provisions of Title VII are analogous." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136–37 (Tex. 2015) (first citing Tex. Lab. Code § 21.001(1); and then citing *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam)).

18

### 1.  Retaliation

Norman alleges that BISD retaliated against him after he made his Facebook post and after he was terminated for filing a charge against it with the EEOC and Texas Workforce Commission Civil Rights Division ("TWCCRD"). [Dkt. 9 at ¶¶ 6, 15, 17, 21].

"The substantive law governing Title VII and [Texas Labor Code] retaliation claims is identical." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). To establish a retaliation claim, a plaintiff must allege (1) "[he] engaged in protected activity," (2) "an adverse employment action occurred," and (3) "a causal link exists between the protected activity and the adverse employment action." *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021) (quoting *Gorman*, 753 F.3d at 170). The Texas Labor Code defines a "protected activity" as opposing a discriminatory practice; filing a charge or complaint; and testifying, assisting, or participating in an investigation, proceeding, or hearing. Tex. Lab. Code § 21.055.

Here, BISD primarily argues that Norman did not engage in a protected activity. [Dkt. 10 at 8–9]. It argues that Norman cannot rely on his EEOC charge of discrimination to support a retaliation claim because it was filed months *after* he was terminated. *Id.* at 8.[11] In response, Norman indicates that he filed a grievance related to his treatment before he was terminated.

---

[11] BISD also raised two arguments that Norman failed to address. For one, it argues that Norman's decision to post his Facebook prayer does not constitute a "protected activity" because it "did not oppose a discriminatory practice, nor did have anything to do with an investigation or internal complaint." *Id.* The Court agrees with BISD, as posting a Facebook prayer which neither alleges any discriminatory practice nor participation in an investigation does not constitute "protected activity" under the Texas Labor Code. *See* Tex. Lab. Code § 21.055.

Additionally, BISD argues that Norman's claim that it discriminated against him by terminating *other* witnesses fails as a matter of law. [Dkt. 10 at 9]. In support of this argument, it cites *Moyer v. Jos. A. Bank Clothiers, Inc.*, No. 3:11-cv-3076-L, 2014 WL 1661211, at *3 (N.D. Tex. Apr. 25, 2024), *aff'd*, 601 F. App'x 247 (5th Cir. 2015) (per curiam). There, the plaintiff brought a Title VII retaliation claim against her employer where she asserted that the employer retaliated against her by threatening to terminate her coworker, who was a friend and witness for her EEOC investigation. *Id.* at *2. On summary judgment, the court found that an employer's mild reprisal of a mere acquaintance will almost never amount to a finding of a materially adverse employment action sufficient for a post-employment retaliation claim. *Id.* at *3–4. In contrast, firing a plaintiff's family member will almost always constitute an adverse employment action. *Id.* at *3. Here, Norman alleges that BISDPD "terminated witnesses that knew of or witnessed retaliatory actions[.]" [Dkt. 9 at ¶ 22]. Norman does not allege his relationship to these witnesses, meaning the Court cannot adequately analyze any alleged postemployment retaliation claim.

[Dkt. 13 at 14–15]. However, this information is found nowhere in the complaint. *See generally* [Dkt. 9]. Norman was terminated on January 5, 2023, *id.* at ¶ 23, and he filed his charge with the EEOC on June 30, 2023, months after his termination. *Id.* at ¶ 15; [Dkt. 10-2 at 2]. Neither the complaint nor BISD's motion to dismiss clearly indicate when Norman filed his charge with the TWCCRD. In his complaint, Norman indicates that TWCCRD issued a right to sue letter on October 4, 2023, but this does not shed any light on when he filed his complaint with the TWCCRD. [Dkt. 9 at ¶ 15]. Logically, a plaintiff cannot recover under a retaliation claim for reports or complaints made after an employer makes an adverse employment decision. *See, e.g.*, *Saketoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (finding that nothing in the record supported that the plaintiff made a report of discriminatory behavior *before* a decision was made not to renew her contract). Therefore, because Norman either fails to allege when he filed a complaint or alleges that he filed a charge after his termination, he fails to plausibly allege that he engaged in protective activity that caused his termination.

Accordingly, the Court **GRANTS** the motion as to the state-law retaliation claim.

### 2.  Disparate Treatment

Norman alleges religious discrimination and claims that he "was treated disparately because of his religious beliefs." [Dkt. 9 at ¶ 37]. More specifically, he claims that BISD subjected him to disparate discipline, including wrongful termination and fabricated false accusations against him with allegations that he disrespected current and past supervisors. *Id.* at ¶¶ 6–7.

The Texas Labor Code prohibits unlawful discrimination by an employer based on "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. Courts may look to federal law to interpret the Texas Labor Code in the context of discrimination. *AutoZone*, 272 S.W.3d at 592. To allege a Chapter 21 discrimination claim, "a plaintiff must show that he or she was (1) a member of the class protected by the Act, (2) qualified for his or her employment

position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the opposing class." *Id.* (first citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); and then citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

Here, BISD argues that Norman failed to plausibly allege it treated him less favorably than employees outside of his protected class. [Dkt. 10 at 6].[12] In response, Norman argues that his disparate treatment claim is based on "direct discriminatory treatment after he posted a prayer," but that "[t]he other characteristics surrounding his claim should be part of discovery." [Dkt. 13 at 14]. Norman, therefore, essentially concedes that—outside of allegations of a direct causal link between his prayer and termination—his complaint contains no facts supporting a disparate treatment claim because he needs discovery to obtain more facts. The Court is unpersuaded by Norman's argument, as discovery is not needed to allege whether other employees outside of his religious status were treated more favorably than he. *AutoZone*, 272 S.W.3d at 592. Because Norman fails to allege that other similarly-situated nonreligious employees were treated more favorably, he fails to state a claim for disparate treatment.

Accordingly, the Court **GRANTS** the motion as to the disparate treatment claim.

### 3.  Hostile Work Environment

Norman alleges that he was subjected to unlawful harassment and a hostile work environment which was motivated by the speech in his Facebook post. [Dkt. 9 at ¶¶ 18, 20].

---

[12] BISD also argues that Norman failed to plausibly plead his religious beliefs because "prayer" could also be interpreted in a secular context, such as "praying for relief." *Id.* According to Merriam-Webster's Dictionary, "prayer" can mean "an address (such as a petition) to God or a god in word or thought" or "an earnest request or wish." *Prayer*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/prayer (last visited Mar. 5, 2025). Synonyms for "prayer" include: petition, request, pleading, invocation, appeal, desire, demand, and claim. *Prayer*, MERRIAM-WEBSTER THESAURUS, https://www.merriam-webster.com/thesaurus/prayer (last visited Mar. 5, 2025). Nothing in Norman's Facebook post indicates that his "prayer" was an address or petition to God or a god. *See* [Dkts. 10-1; 18-1]. Rather, the use of "prayer" was ambiguous and can reasonably be interpreted to mean a request or wish.

Like a disparate treatment claim, hostile work environment claims fall under Texas Labor Code § 21.051, and courts may look to federal law to interpret the Texas Labor Code in the context of discrimination. *See Plaskett v. Deer Parking Ref. L.P.*, Civil Action No. 24-1433, 2024 WL 5264706, at *3–4 (S.D. Tex. Dec. 31, 2024) (applying the same hostile work environment standard to Chapter 21 and Title VII claims for religious discrimination); *AutoZone*, 272 S.W.3d at 592; Tex. Lab Code § 21.051. To establish a hostile work environment claim, the plaintiff must allege:

> (1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action."

*Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 433 (5th Cir. 2022) (quoting *West v. City of Hous.*, 960 F.3d 736, 741–42 (5th Cir. 2020)). The harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West*, 960 F.3d at 741–42. To determine whether the work environment harassment is "sufficiently severe or pervasive," courts look at the frequency and severity of the conduct, whether the conduct interferes with the employee's work performance, and whether the conduct is physically threatening or humiliating. *Lee v. Reg'l Nutrition Assistance, Inc.*, 471 F. App'x 310, 311 (5th Cir. 2012) (per curiam) (citing *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011)). Isolated incidents, offhand comments, and simple teasing will not amount to a hostile work environment unless they are extremely serious. *Id.* (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007)).

Here, BISD argues that Norman fails to allege that he was subjected to any harassment motivated by his religion. [Dkt. 10 at 7]. In response, Norman states that he plausibly alleged the causal connection between his Facebook post and his treatment, making his hostile work environment claim actionable. [Dkt. 13 at 14]. In his complaint, Norman alleges that his

harassment "consisted primarily of unwarranted, false, and exaggerated criticism of Plaintiff's job performance." [Dkt. 9 at ¶ 18]. He states that Lieutenant Haynes investigated him and wrongfully accused him of disrespecting his supervisors, which caused him to be suspended without pay for ten days. *Id.* at ¶¶ 18, 20. Norman additionally claims that he was "subjected to harassment, bullying, and discriminatory acts by Captain E. Payne and made to surrender his taser." *Id.* at ¶ 20. The Court finds that these allegations fall short of demonstrating that Norman's harassment was so severe and pervasive to warrant relief. *West*, 960 F.3d at 741–42. One of the allegations is conclusory, namely his allegation that he was "subjected to harassment, bullying, and discriminatory acts by Captain E. Payne." [Dkt. 9 at ¶ 20]. Additionally, the other allegations demonstrate isolated incidents of negative behavior; Norman does not allege that the conduct was pervasive, severe, or affected his work performance. *See Lee*, 471 F. App'x at 311.

Accordingly, the Court **GRANTS** the motion as to the hostile work environment claim.

### b.  Federal Claims and *Monell* Liability

Norman also brings claims alleging violations of the First and Fourteenth Amendments against BISD, a governmental entity. [Dkt. 9 at ¶¶ 43–48]. These claims are commonly known as "*Monell* claims," which are municipality liability claims brought under 42 U.S.C. § 1983. "Municipalities are not liable for the unconstitutional actions of their employees under respondeat superior." *Groden v. City of Dall.*, 826 F.3d 280, 283 (5th Cir. 2016) (citing *Monell*, 436 U.S. at 694). But that does not mean municipalities are immune from § 1983 liability. *See, e.g.*, *Monell*, 436 U.S. at 690 (concluding that municipalities and local government units are among those "persons" who may be sued under § 1983). *Monell* and its progeny have provided that to hold a municipality liable under Section 1983, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional

actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (footnote omitted) (collecting cases).

Here, Norman alleges that BISDPD "had a policy to falsely accuse employees of crimes in order to support a pretextual termination." [Dkt. 9 at ¶ 22]. To establish an official policy claim under *Monell*, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted). "The three attribution principles identified here—a policymaker, an official policy and the 'moving force' of the policy— are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578. As the Court discussed above, Norman failed to plausibly allege violations of the First and Fourteenth Amendments. *See supra* Section III.B.iii. As there are no plausible allegations of any constitutional violation, BISD cannot be held responsible under *Monell* and its progeny, as there must be some underlying unconstitutional conduct for a governmental entity to be civilly liable. *See, e.g.*, *Piotrowski*, 237 F.3d at 578. [13]

Accordingly, the Court **GRANTS** the motion as to the federal causes of action.

## IV.   CONCLUSION

It is therefore **ORDERED** that Defendants Beaumont Independent School District and Beaumont Independent School District Police Department's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. 10] is hereby **GRANTED WITH PREJUDICE**. It is further

---

[13] Additionally, to the extent Norman alleges that BISD delegated authority to the Individual Defendants or Lieutenant Haynes, such an assertion fails because—again—Norman fails to allege any underlying constitutional violation that would give rise to *Monell* liability. *See, e.g.*, *Piotrowski*, 237 F.3d at 579 n.20 ("Plainly, if a *violation* is caused by an *unconstitutional ordinance or regulation* officially adopted and promulgated by the municipality's lawmaking officers or by an official who has been delegated policymaking authority, those individuals are the policymakers." (emphasis added) (citation omitted)).

**ORDERED** that Defendants Dr. Shannon Allen and Chief Joseph Malbrough's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. 18] is **GRANTED WITH PREJUDICE**.

It is further **ORDERED** that all Court dates and deadlines are hereby **VACATED** and that all pending motions herein are **DENIED AS MOOT**.

This constitutes a **FINAL JUDGMENT**, and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 19th day of March, 2025.**

*Michael J. Truncale*

Michael J. Truncale
United States District Judge