IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| SHANTER NORMAN, | § | |
|    *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO: 1:24-CV-00007 |
| BEAUMONT INDEPENDENT | § | |
| SCHOOL DISRICT, and | § | |
| BEAUMONT | § | |
| ISD POLICE DEPARTMENT | § | |
|    *Defendants* | § | |

## PLAINTIFF'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, SHANTER NORMAN ("Plaintiff" or "Norman"), and files this Motion for New Trial pursuant to Federal Rule of Civil Procedure 59, and would respectfully show the Court as follows:

## I.    INTRODUCTION

Plaintiff Shanter Norman ("Norman") respectfully moves this Court for a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(B) and/or alteration or amendment of the judgment pursuant to Rule 59(e). This motion concerns the Court's Order dated March 19, 2025 [Dkt. 40], granting Defendants' Motions to Dismiss [Dkts. 10, 18] and dismissing all of Plaintiff's claims with prejudice. As detailed below, the Court committed significant legal and factual errors in its analysis that warrant relief under Rule 59.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment within 28 days of its entry. The Fifth Circuit has consistently held that a Rule 59(e) motion may be granted when there is: (1) an intervening change in controlling law; (2) new

evidence not previously available; or (3) the need to correct a manifest error of law or fact. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003).

The Court has discretion to reopen a judgment if one has been entered, set aside findings of fact, conclusions of law, or other parts of the record. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173-74 (5th Cir. 1990). While the Rule 59(e) motion serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence, the Court should grant such relief when necessary to prevent manifest injustice. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

## III.    ARGUMENTS

### A.    THE COURT IMPROPERLY CONVERTED THE MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT WITHOUT PROVIDING PROPER NOTICE OR OPPORTUNITY TO PRESENT EVIDENCE

Federal Rule of Civil Procedure 12(d) mandates that when matters outside the pleadings are presented to and not excluded by the court in connection with a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Fifth Circuit has consistently recognized that this rule requires that the motion to dismiss be converted into a motion for summary judgment and dispositive procedural requirements of Rule 56 apply. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir. 1993).

As the Fifth Circuit explained in *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990), rule 12(b) gives a district court complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.

However, once the court decides to accept such material, the motion must be treated as a motion for summary judgment.

> 1.   THE COURT'S CONSIDERATION OF THE FACEBOOK POST ATTACHMENT EFFECTIVELY CONVERTED THE MOTION

While the Court acknowledged the "four corners" rule applicable to Rule 12(b)(6) motions, it nevertheless conducted an extensive analysis of a Facebook post attachment submitted by Defendants. The Court stated at Dkt. 40, p. 5-6 that it would consider "the Facebook post and EEOC charge attachments" because they were "referred to in the complaint and are central to Norman's claims." The Court then proceeded to engage in a fact-intensive analysis of the content, form, and context of the Facebook post to determine whether Norman's speech constituted a matter of public concern—a quintessential summary judgment analysis.

The Court went far beyond merely noting the existence of the Facebook post and instead engaged in detailed content analysis more appropriate for summary judgment. The Court stated at Dkt. 40, p. 13-14: "First, as related to content, like Grazoisi and Connick, Norman's speech merely conveys an opinion and information that he is unhappy with his supervisor or agency." The Court further concluded that "[n]othing in his post relates to how the agency or supervisor treats the public or how their actions affect the community at large." These subjective determinations about the meaning and import of Norman's speech constitute factual findings improper at the motion to dismiss stage.

By converting the motion to dismiss into a de facto summary judgment motion without expressly acknowledging the conversion, the Court failed to provide Norman with "a reasonable opportunity to present all the material that is pertinent to the motion" as required by Rule 12(d).

2.    DESPITE THIS CONVERSION, THE COURT REFUSED TO CONSIDER PLAINTIFF'S DECLARATION

While the Court was willing to consider Defendants' evidentiary submissions, it simultaneously refused to consider Norman's declaration, stating at Dkt. 40, p. 6 that it would "not consider Norman's declaration because it contains new factual allegations that he failed to plead in his complaint." This inconsistent approach prejudiced Norman by allowing Defendants to present evidence outside the pleadings while denying Norman the same opportunity.

The Fifth Circuit has established that fundamental fairness requires that if a court relies on materials outside the pleadings submitted by one party, the opposing party must be afforded a meaningful opportunity to respond with its own evidence. *See Snider v. L-3 Commc'ns Vertex Aerospace, L.L.C.*, 946 F.3d 660, 667 (5th Cir. 2019) (discussing the requirement that a court must give the parties an adequate opportunity to respond to matters outside the pleadings).

In practice, the Court engaged in the factual analysis characteristic of summary judgment proceedings without affording Norman the procedural protections that would accompany a properly noticed summary judgment motion. While formal notice that a court intends to convert a 12(b)(6) motion is not required if the court accepts matters outside the pleadings, there must still be a meaningful opportunity for both parties to present pertinent evidence. *See Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487 (5th Cir. 2016).

B.    THE COURT ERRONEOUSLY CONCLUDED THAT NORMAN'S DECLARATION CONTAINED NEW FACTUAL ALLEGATIONS NOT INCLUDED IN THE COMPLAINT

The Court's Order refusing to consider Norman's declaration on the grounds that it allegedly contained "new factual allegations that he failed to plead in his complaint" constitutes a clear error of law and fact. *See* Dkt. 40 at 6. A proper analysis of Norman's Complaint and

subsequent Declaration reveals that the Declaration merely elaborated on facts already pleaded rather than asserting new factual allegations.

      1.    COMPARISON OF THE FACTUAL ALLEGATIONS IN THE COMPLAINT AND DECLARATION

When viewed in the proper light, the factual allegations in Norman's Declaration are consistent with and directly related to those in his Complaint. The Complaint specifically alleges:

- Norman made "a Facebook post praying for integrity and accountability for those in positions of power." Dkt. 9 at ¶ 6.

- "Lieutenant P. Haynes constructed false allegations that Plaintiff had been 'disrespectful' about his past and present supervisors and contrived reports of anonymous complaints regarding the Plaintiff." Id.

- "[T]he retaliation against Plaintiff occurred after Plaintiff made a Facebook post praying for integrity and accountability for those in positions of power." Id.

- Norman "was subjected to harassment, bullying, and discriminatory acts" and "suspended for 10 days without pay following his Facebook prayer." Id. at ¶ 20.

Norman's Declaration did not add new factual allegations but instead provided necessary context for these already-pleaded facts. *See* Dkt. 13-1. For example, the Declaration explained the specific content of the Facebook post referenced in the Complaint, provided details about the timing of events following the post, and elaborated on the disciplinary actions taken against him.

The Court's conclusion that the Declaration contained new factual allegations misapprehends the relationship between the Complaint and the Declaration. As the Fifth Circuit has recognized, a plaintiff is not required to plead "specific facts" but rather only "enough facts to state a claim to relief that is plausible on its face." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Norman's Complaint met this

standard, and his Declaration merely provided additional context and supporting details for the facts already alleged.

2.    LEGAL STANDARD REQUIRING LIBERAL CONSTRUCTION OF PLEADINGS

The Court's rejection of Norman's Declaration also contravenes the well-established principle that pleadings must be construed liberally at the motion to dismiss stage. The Supreme Court has made clear that when ruling on a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009). This principle extends to the consideration of supplemental materials properly before the court. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts must consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice').

By refusing to consider Norman's Declaration while simultaneously considering Defendants' outside materials, the Court effectively held Norman to a higher pleading standard than required under *Twombly* and *Iqbal*. This disparate treatment constitutes reversible error. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (emphasizing that the court must view all facts and inferences... in the light most favorable to the nonmoving party).

The Court's asymmetric approach—considering Defendants' evidence while rejecting Norman's responsive declaration—effectively denied Norman the protections that the Federal Rules of Civil Procedure are designed to provide.

C.    THE COURT ERRONEOUSLY HELD THAT NORMAN'S SPEECH DID NOT CONSTITUTE A MATTER OF PUBLIC CONCERN

1.    LEGAL STANDARD FOR DETERMINING PUBLIC CONCERN

The Supreme Court has established that speech involves a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). To make this determination, courts must consider the "content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. The Fifth Circuit has repeatedly emphasized that this inquiry should be broadly construed to protect speech on matters of public importance. *See Lane v. Franks*, 573 U.S. 228, 241 (2014) ("Speech by citizens on matters of public concern lies at the heart of the First Amendment...").

Importantly, when weighing these factors, courts must not artificially segregate the analysis or give undue weight to any single factor. *See Snyder v. Phelps*, 562 U.S. 443, 454 (2011) (examining all three factors together); *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 (5th Cir. 2000).

2.    PROPER ANALYSIS OF NORMAN'S SPEECH UNDER APPLICABLE STANDARDS

The Court's analysis of Norman's Facebook post fundamentally mischaracterizes the nature of his speech and erroneously concludes that it did not address a matter of public concern. Dkt. 40 at 13-14. This conclusion constitutes clear error for several reasons.

First, the content of Norman's post directly implicated matters of significant public concern—namely, the integrity and accountability of those in leadership positions, particularly in the context of law enforcement. The Fifth Circuit has recognized that speech addressing the integrity and qualifications of those holding positions of public trust constitutes speech on a

matter of public concern. *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc); *see also Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001) (recognizing that speech exposing or otherwise addressing malfeasance, corruption or breach of the public trust, especially within a police department, touches upon matters of public concern).

Norman's post explicitly addressed qualities essential to leadership in public service: listening to subordinates, maintaining integrity, and upholding accountability. These concerns transcend mere personal grievances and implicate broader questions about the proper conduct of public officials—precisely the type of speech that the First Amendment is designed to protect. See *Lane v. Franks*, 134 S. Ct. 2369, 2378, 189 L. Ed. 2d 312 (2014), 573 U.S. at 241 (The Court has often recognized that speech about the integrity of government officials occupies a place of special importance in First Amendment jurisprudence.).

Second, the Court correctly acknowledged that the form of Norman's speech—a post on Facebook, a public forum—weighs in favor of finding that it addressed a matter of public concern. Dkt. 40 at 14. This recognition aligns with precedent establishing that speech disseminated through public channels is more likely to implicate matters of public concern. *See Graziosi v. City of Greenville*, 775 F.3d 731, 739 (5th Cir. 2015) (noting that a post on a public official's Facebook page weighs in favor of finding speech on a matter of public concern).

Third, the Court erred in its assessment of the context of Norman's speech. Contrary to the Court's conclusion, Norman's speech was not made "in the context of an employer-employee dispute." Dkt. 40 at 14. In fact, Norman had already announced his candidacy for Sheriff, and his Facebook post related to his campaign message, as referenced in his Declaration. The context of political candidacy significantly strengthens the public nature of his speech. *See Wetherbe v. Tex.*

*Tech Univ. Sys.*, 699 F. App'x 297, 301 (5th Cir. 2017) (speech made against a backdrop of widespread debate in the community is more likely to be of public concern).

### 3.    MISAPPLICATION OF CONTENT ANALYSIS

The Court's analysis improperly weighted the content factor over form and context, contrary to established precedent. The Court narrowly focused on whether Norman's post "relates to how the agency or supervisor treats the public or how their actions affect the community at large." Dkt. 40 at 14. This approach contravenes the Supreme Court's guidance in *Snyder*, which requires courts to examine all three factors together without giving dispositive weight to any single factor. 562 U.S. at 454.

Moreover, the Court's content analysis mischaracterizes the nature of Norman's speech. The Court erroneously characterizes Norman's post as merely conveying "an opinion and information that he is unhappy with his supervisor or agency." Dkt. 40 at 13-14. This characterization ignores the broader implications of Norman's prayer for integrity and accountability in leadership positions, which addresses systemic issues rather than personal grievances.

The Fifth Circuit has specifically cautioned against this type of narrow interpretation, emphasizing that speech need not explicitly name specific officials or policies to address matters of public concern. *See Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006); *Lane*, 573 U.S. at 241.

By misapplying the content factor and giving it undue weight over form and context, the Court committed reversible error in concluding that Norman's speech did not address a matter of public concern.

D.    THE COURT IMPROPERLY DISREGARDED THE CONTEXT OF THE
      SPEECH IN SUBSEQUENT POSTS

I.    ERRONEOUS LIMITATION TO A SINGLE FACEBOOK POST

The Court's analysis was predicated on the artificial limitation of considering only a single Facebook post, despite evidence in the record of a series of related posts that provided essential context. Dkt. 40 at 6 n.5. This limitation fundamentally distorted the Court's understanding of Norman's speech and led to erroneous conclusions about its nature and purpose.

The Court justified this limitation based on the Complaint's reference to "a Facebook post" in the singular. Id. However, this overly technical reading contradicts the liberal construction required at the pleading stage and disregards the broader context necessary for proper First Amendment analysis.

As the Supreme Court has repeatedly emphasized, the context of speech is a critical factor in determining whether it addresses a matter of public concern. *See Connick*, 461 U.S. at 147-48 (requiring consideration of "content, form, and context"). By artificially limiting its analysis to a single post, the Court failed to consider the full context of Norman's speech, including subsequent posts that clarified the public nature of his concerns.

2.    LEGAL REQUIREMENT TO CONSIDER FULL CONTEXT

The requirement to consider the full context of speech is not merely a procedural nicety but a substantive constitutional requirement. As the Fifth Circuit has explained, "speech of public import requires careful analysis of the 'content, form, and context of a given statement, as revealed by the whole record.'" *Kennedy*, 224 F.3d at 366 (quoting *Connick*, 461 U.S. at 147-48) (emphasis added).

By refusing to consider Norman's subsequent Facebook posts, the Court failed to analyze "the whole record" as required by *Connick* and its progeny. This failure fundamentally undermined

10

the Court's First Amendment analysis and constitutes reversible error. By adopting an artificially narrow view of Norman's speech, the Court failed to fulfill its obligation to construe First Amendment protections broadly.

### E. THE COURT ERRONEOUSLY CONCLUDED THAT NORMAN FAILED TO ALLEGE PARTICIPATION IN A GRIEVANCE PROCESS

#### 1. MISAPPLICATION OF THE *ROSENSTEIN* STANDARD

The Court's conclusion that Norman "fails to state that he requested a name-clearing hearing or that Defendants denied such a hearing" constitutes clear error in light of the allegations in the Complaint. Dkt. 40 at 16. In reaching this conclusion, the Court misapplied the standard established in *Rosenstein v. City of Dallas*, 876 F.2d 392, 395-96 (5th Cir. 1989).

In *Rosenstein*, the Fifth Circuit held that a "request to participate in established grievance, appeals, or other review procedures to contest defamatory charges was sufficient to state a request for a name-clearing hearing." Id. This standard does not require a plaintiff to explicitly allege a formal request for a "name-clearing hearing" using those precise words. Rather, allegations of participation in grievance procedures or appeals processes are sufficient to satisfy this requirement.

Norman's Complaint explicitly alleges that after "filing his complaints of retaliation, and participating in the investigation of his complaints of discrimination, Lieutenant P. Haynes subjected Plaintiff to further retaliation." Dkt. 9 at ¶ 19. This allegation, properly construed, indicates that Norman filed complaints and participated in the investigation process—precisely the type of participation in "established grievance, appeals, or other review procedures" that *Rosenstein* recognized as sufficient to state a request for a name-clearing hearing.

The Court's narrow reading of Norman's allegations contradicts the liberal construction required at the pleading stage and disregards the substantive content of his claims. *See Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (noting that a complaint "need only give the defendant fair notice of what the... claim is and the grounds upon which it rests") (internal quotation marks omitted).

### 2.    FAILURE TO CONSTRUE ALLEGATIONS LIBERALLY

The Court's conclusion that Norman failed to allege participation in a grievance process also contravenes the established principle that a court must construe the allegations in a complaint in the light most favorable to the plaintiff. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (requiring courts to construe pleadings liberally); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that courts must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff).

Norman's allegation that he filed "complaints of retaliation" and participated "in the investigation of his complaints of discrimination" clearly indicates his engagement with formal grievance procedures. Dkt. 9 at ¶ 19. When construed liberally, these allegations are more than sufficient to satisfy the *Rosenstein* standard for requesting a name-clearing hearing.

By failing to construe these allegations liberally, the Court effectively imposed a heightened pleading requirement for due process claims that is inconsistent with the Federal Rules of Civil Procedure and established precedent. *See Erickson*, 551 U.S. at 93 (rejecting heightened pleading standards for specific claims); *Leatherman*, 507 U.S. at 168 (same).

### CONCLUSION AND PRAYER

For the foregoing reasons, the Court's Order of March 19, 2025 [Dkt. 40] contains multiple clear errors of law and fact that warrant relief under Rule 59(e). The Court improperly converted Defendants' Motions to Dismiss into motions for summary judgment without providing Norman a fair opportunity to present responsive evidence, erroneously rejected Norman's Declaration

while simultaneously considering Defendants' outside materials, incorrectly concluded that Norman's speech did not address matters of public concern, improperly limited its analysis to a single Facebook post despite evidence of a series of related posts, and erroneously determined that Norman failed to allege participation in grievance procedures.

These errors, individually and collectively, constitute manifest errors of law that substantially prejudiced Norman's rights and led to an unjust result. As the Fifth Circuit has emphasized, Rule 59(e) exists precisely to correct such errors and prevent manifest errors of law or fact. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

WHEREFORE, PREMISES CONSIDERED, Plaintiff Shanter Norman respectfully requests that this Court:

1. Vacate its Order of March 19, 2025 [Dkt. 40];

2. Deny Defendants' Motions to Dismiss [Dkts. 10, 18];

3. In the alternative, grant Norman leave to amend his Complaint to address any perceived deficiencies;

4. Award Norman any other relief to which he may be entitled; and

5. Grant such other and further relief, both general and special, at law and in equity, to which Norman may be justly entitled.

Respectfully submitted,

*/s/    Brandon P. Monk*
Brandon P. Monk
TBN. 24048668
4875 Parker Drive
Beaumont, Texas 77705
Phone:  (409) 724-6665
Fax:     (409) 729-6665
brandon@themonklawfirm.com

ATTORNEY FOR SHANTER NORMAN

13

## CERTIFICATE OF SERVICE

I hereby certify that on April 11. 2025,  I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/    *Brandon P. Monk*
Brandon P. Monk